RHESA HAWKINS BARKSDALE, Circuit Judge:
Darrell Keith Crittenden, who pleaded guilty in March 2002 to knowingly and intentionally possessing an illegal drug, with intent to distribute, appeals his sentence, primarily challenging being classified as a career offender under Sentencing Guidelines § 4B1.1. For that classification, at issue is whether Crittenden’s previous Texas conviction for delivery of a simulated controlled substance qualifies under § 4B1.1 as one of the requisite two controlled substance offenses. AFFIRMED.
I.
After Crittenden was arrested in Texas, in February 2002, cocaine was found in his vehicle. Crittenden pleaded guilty to possession, with intent to distribute, 77 grams of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).
Previously, Crittenden had been convicted for two offenses under Texas law: delivery of a simulated controlled substance in 1994; and delivery of a controlled substance in 1996. Based on these prior convictions, the district court found (over Crit-tenden’s objection) that Crittenden was a career offender under the Guidelines, resulting in a substantial increase in his sen *707 tence. He was sentenced, inter alia, to 210 months’ imprisonment.
II.
Crittenden presents two challenges to his sentence. First, claiming that his previous conviction for delivery of a simulated controlled substance is not a controlled substance offense under the Guidelines, he contests being classified as a career offender. Second, claiming a conflict between the judgment and oral sentence pronouncement, he maintains his sentence must be reformed to conform to the latter.
. A.
Application of the Guidelines is reviewed de novo. E.g., United States v. Booker, 334 F.3d 406, 412 (5th Cir.2003). They provide for career offender status
if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction,
(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and
(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.
U.S.S.G. § 4B1.1 (2001) (emphasis added). The only factor at issue is whether the 1994 Texas conviction for delivery of a simulated controlled substance is a Guidelines controlled substance offense.
Guidelines § 4B1.2 defines such an offense as one
under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.
Id. § 4B1.2(b) (emphasis added). The Guidelines, however,, do not define “counterfeit substance” as used in § 4B1.2.- The Government contends that a simulated controlled substance offense is a counterfeit controlled substance offense for Guidelines’ purposes. Whether one offense equates with the other is a question of first impression in our circuit. (Our court addressed this issue in an unpublished opinion, United States v. Franklin, No. 97-40160, 1997 WL 574822 (5th Cir. 18 Aug. 1997); there, however, the Government conceded that the simulated controlled substance offense was not a controlled substance offense.)
With little analysis, two other circuits (Eighth and Eleventh) have addressed this issue. In United States v. Frazier, 89 F.3d 1501, 1505 (11th Cir.1996), a split panel held a Florida statute prohibiting “any person to ... in any manner offer to unlawfully sell to any person a controlled substance ... and then sell to such person any other substance in lieu of such controlled substance” was a controlled substance offense under Guidelines § 4B1.1. See also United States v. Evans, 358 F.3d 1311 (11th Cir.2004) (citing Frazier and holding a conviction involving the delivery of chalk rather than cocaine was a controlled substance offense under § 4B1.1). Frazier cited United States v. Hester, 917 F.2d 1083, 1085 (8th Cir.1990), where a divided panel held an offense characterized as a misdemeanor under California law was a felony under § 4B1.1 because it was punishable by more than one year’s imprisonment. The Hester majority appears to have implicitly decided that a conviction under the California statute prohibiting the sale of a substance, in lieu of a controlled substance, was a counterfeit controlled substance offense under § 4B1.1. Id. at 1084, 1086 (referring to the conviction as one for selling a counterfeit controlled substance, whereas the language of *708 the statute (quoted only by the dissent) prohibited sale of a substance in lieu of a controlled substance). More recently, the Eighth Circuit, in dicta, noted that the Government had not appealed the ruling that sale of a simulated controlled substance (baking soda) was not a controlled substance offense under the Guidelines. United States v. Peters, 215 F.3d 861, 862 (8th Cir.2000).
“It is well established that our interpretation of the Sentencing Guidelines is subject to the ordinary rules of statutory construction. If the language of the guideline is unambiguous, our inquiry begins and ends with the plain meaning of that language.” United States v. Carbajal, 290 F.3d 277, 283 (5th Cir.2002) (citation omitted). See also United States v. Solis-Campozano, 312 F.8d 164, 166 (5th Cir.2002); United States v. Boudreau, 250 F.3d 279, 285 (5th Cir.2001).
For its ordinary, plain meaning, “counterfeit” is defined as “made in imitation of something else with intent to deceive: forged”. WebsteR’s New Collegiate Dictionary 297 (9th ed. 1991). See also BlaCk’s Law Dictionary 354 (7th ed. 1999) (“to forge, copy or imitate (something) without a right to do so and with the purpose of deceiving or defrauding”). Essentially, the plain meaning of counterfeit has two components: made in imitation; and intent to deceive.
The Texas law under which Crittenden was convicted defines a simulated controlled substance as one “that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to be”. Texas Health & Safety Code Ann. § 482.001(4) (Vernon 2003). For example, under Texas law, flour packed to resemble cocaine is a simulated controlled substance. E.g., Rodriguez v. State, 879 S.W.2d 283 (Tex.App.1994, pet.ref'd).
Therefore, looking to the two components of counterfeit: a substance “purported to be a controlled substance”, but which is not such a substance, is necessarily “made in imitation of something else”; and a harmless substance would not be purported to be a controlled substance without “inten[ding] to deceive”. Accordingly, a Texas conviction for delivery of a simulated controlled substance satisfies both components of the plain meaning of “counterfeit” as used in the Guidelines.
On the other hand, although the Guidelines do not define a counterfeit controlled substance, the Controlled Substance Act, 21 U.S.C. § 801, et seq., defines this term in a far more restricted manner than its plain meaning. For the Controlled Substances Act, a counterfeit substance is
a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.
21 U.S.C. § 802(7).
The Texas simulated controlled substance offense does not require that the purported controlled substance have any identifying marks or otherwise misrepresent its manufacturing origin. As discussed, a Texas simulated controlled substance offense requires only that the substance be in imitation of a controlled substance. Therefore, under the more narrow definition in the federal Controlled Substances Act, the elements for a Texas simulated controlled substance offense do not equal those for a counter *709 feit controlled substance offense under the federal Act.
Nor do they equate with those for a “counterfeit substance” under the Texas Controlled Substances Act. There, such a substance is
a controlled substance that, without authorization, bears or is in a container or has a label that bears an actual or simulated trademark, trade name, or other identifying mark, imprint, number, or device of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.
Tex. Health & Safety Code AnN. § 481.002(7) (Vernon 2003). This definition of counterfeit substance is substantially similar to that found in the Federal Controlled Substances Act; but, unlike the federal definition, the Texas definition does not require that the counterfeit substance “thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser”. 21 U.S.C. § 802(7).
Along this line, the Guidelines’ § 4B1.1 background comments for defining a career offender refer to 28 U.S.C. § 994(h), which requires the Sentencing Commission to mandate near the maximum sentence for those with previous convictions of two or more specific kinds of felonies. One such felony is “an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)”. 28 U.S.C. § 994(h)(1)(B). Section 401 prohibits, inter alia, distribution of counterfeit controlled substances, 21 U.S.C. § 841(a)(2); therefore, it is arguable that the Controlled Substances Act’s definition of counterfeit is applicable to the Guidelines. On the other hand, as noted, the Guidelines neither define a counterfeit controlled substance offense nor specifically incorporate the definition from the Controlled Substances Act.
The answer is found in those same Guidelines’ background comments. They recognize that the Commission has modified § 994(h)’s definition of career offender in order “to avoid ‘unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct’ ”. U.S.S.G. § 4B1.1 (baekground)(emphasis added). For example, § 994(h)(2)(B), identifying the type of convictions that qualify for the requisite two prior convictions for career offender status, does not list convictions under state law; on the other hand, they are so listed in Guidelines § 4B1.1 (incorporating § 4B1.2(b)’s definition of controlled substance offense, quoted supra (“offense under federal or state law”; emphasis added)).
This reflects the Commission’s intent to depart, as need be, from the Controlled Substances Act’s definition of controlled substance offense (and, in turn, counterfeit controlled substance), in order to avoid sentencing disparities. Accordingly, and because Guidelines §§ 4B1.1 and 4B1.2 neither define the term counterfeit, nor cross-reference the Controlled Substances Act for its definition there (and, contrary to the Dissent at 712, do not “effectively include []” it), we hold that our rules of statutory interpretation govern. Therefore, we accord counterfeit its plain meaning — made in imitation of something with intent to deceive. Providing additional compelling support for applying the plain meaning rule are quite obvious, strong policy reasons for interpreting broadly a counterfeit controlled substance offense to encompass a simulated controlled substance offense.
First, the sale of simulated controlled substances carries with it the same dangers of violence as the sale of a controlled *710 substance, as well as many, if not most, of the numerous other egregious harms flowing from such sales. E.g., Record Head Corp. v. Sachen, 682 F.2d 672, 680 (7th Cir.1982) (upholding against challenge on other grounds ordinance prohibiting sale of simulated controlled substances because they encourage illegal use of drugs and should be prevented for health and safety of community); Fla. Businessmen for Free Enterprise v. City of Hollywood, 673 F.2d 1213, 1223 (11th Cir.1982) (upholding ordinance prohibiting sale of simulated controlled substances because they contribute to atmosphere of community acceptance of illegal use of controlled substances). We do not believe that the Guidelines intended to omit this type offense in providing for enhanced sentences for those with multiple drug-related convictions. See United States v. Sampson, 140 F.3d 585, 589 (4th Cir.1998) (stating that 21 U.S.C. § 841(a)(2), concerning counterfeit controlled substances, “seems to have been designed to prosecute the unauthorized use of controlled substances found in commercial settings such as prescription drugs, not those sold in street deals”). For these reasons, we disagree with the dissent’s position that a simulated controlled substance offense is fundamentally different from a counterfeit controlled substance offense.
Second, as discussed supra, the Guidelines’ definition of controlled substance offense applies to both state and federal offenses. The Texas offense for distribution of a simulated controlled substance may have a different name or elements under another State’s law; yet each offense may be similar. Again, one purpose of the Guidelines is to treat similar offenses similarly.
B.
Crittenden next challenges the special condition in the judgment that requires him to undergo mental health treatment. He contends: the oral pronouncement of sentence did not include such treatment; and, therefore, the judgment must be reformed to conform with the oral pronouncement. E.g., United States v. Vega, 324 F.3d 798, 801 (5th Cir.2003).
This claim is simply incorrect; Critten-den misreads the record. At sentencing, after discussing the special condition that Crittenden attend drug rehabilitation, the district court judge noted: ‘We’ll also put in a requirement if your Probation Officer feels it would be helpful [that] you’ll participate in any type of mental health treatment program”.
III.
For the foregoing reasons, the judgment is

AFFIRMED.