# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 06-2158

_____

United States of America,     *

                        *

        Appellee,     *

                        *     Appeal from the United States

    v.                  *     District Court for the

                        *     Northern District of Iowa.

Larry Robertson, also known as     *

"Bo,"                      *

                        *

        Appellant.     *

_____

Submitted: November 14, 2006
Filed: January 24, 2007

_____

Before BYE, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

This case presents the purely legal issue of whether a conviction for the manufacture/distribution of a "look-alike" substance under Illinois law qualifies as a controlled substance offense for purposes of the career offender provision of the United States Sentencing Guidelines. The district court[1] held that it does. We affirm.

_____

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

## I. BACKGROUND

In 2005, Larry Robertson pled guilty to one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846, and one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The presentence investigation report (PSR) classified Robertson as a career offender under U.S.S.G. § 4B1.1 because he was at least 18 years old at the time of the instant offense, the instant offense was a felony controlled substance offense, and he had one prior felony conviction for a crime of violence and one prior felony conviction for a controlled substance offense. The two career offender-qualifying prior convictions were both from Illinois: one for armed robbery in 1999 and another for manufacture/distribution of a "look-alike" substance in 2002. Robertson conceded that the armed robbery conviction qualified as a crime of violence but objected to the characterization of the look-alike substance conviction as a controlled substance offense. The district court found that it did qualify and deemed Robertson a career offender under § 4B1.1, resulting in a base offense level of 37. The district court also found that the look-alike substance conviction qualified as a prior drug felony which doubled the statutory mandatory minimum from ten years to twenty years under 21 U.S.C. § 841(b)(1)(A).

Robertson received a three-level reduction for acceptance of responsibility. With a total offense level of 34 and a criminal history category of VI, the district court identified an advisory sentencing guidelines range of 262 to 327 months. The Government made a motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, recommending a 30 percent downward departure to a sentence below the statutory mandatory minimum based on Robertson's substantial assistance. The district court departed 20 percent from the bottom of the advisory guidelines range and sentenced Robertson below the 20-year statutory minimum to 210 months' imprisonment. On appeal, Robertson challenges the district court's determination that his Illinois look-alike substance conviction qualified as a controlled substance offense under § 4B1.1 and as a prior drug felony under 21 U.S.C. § 841(b)(1)(A).

## II.  DISCUSSION

We review de novo the district court's conclusion that the Illinois look-alike substance conviction qualifies as a controlled substance offense for purposes of the career offender provision of the guidelines.  *See United States v. Oman*, 427 F.3d 1070, 1076 (8th Cir. 2005).  The relevant portion of the career offender provision states that a "defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).

The term "controlled substance offense" is defined by the guidelines as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (*or a counterfeit substance*) or the possession of a controlled substance (*or a counterfeit substance*) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (emphases added).  Thus, it is clear that a conviction of a counterfeit substance offense qualifies as a controlled substance offense for the purposes of the career offender enhancement.

The Illinois code contains a counterfeit substance offense, 720 Ill. Comp. Stat. 570/401, but Robertson was not convicted under it.  Instead, Robertson was convicted under the Illinois look-alike substance statute, which states: "It is unlawful for any person knowingly to manufacture, distribute, advertise, or possess with intent to manufacture or distribute a look-alike substance."  720 Ill. Comp. Stat. 570/404(b).  The Government concedes that the Illinois look-alike statute does not apply to controlled substances.  Therefore, the only issue is whether his conviction of a look-alike substance offense is the equivalent of a counterfeit substance offense under § 4B1.2.

The guidelines do not define the term "counterfeit substance," and § 4B1.2 does not import the definition found in the Controlled Substance Act ("CSA").[2] We agree with the Fifth Circuit that, in absence of a definition, "we accord counterfeit its plain meaning." *United States v. Crittenden*, 372 F.3d 706, 709 (5th Cir. 2004); *see also United States v. Montenegro-Recinos*, 424 F.3d 715, 717 (8th Cir. 2006), *cert. denied*, --- U.S. ---, 126 S. Ct. 1386 (2006) (using the "ordinary, contemporary, common meaning" of "sexual abuse of a minor" where the guidelines did not define it). In *Crittenden*, the Fifth Circuit addressed the issue of whether a conviction under a Texas statute prohibiting the "delivery of a simulated controlled substance" qualified as a controlled substance offense for the purposes of § 4B1.1. *Crittenden*, 372 F.3d at 706. Acknowledging that a *simulated* controlled substance is not a controlled substance, the *Crittenden* court was faced with the issue of whether a simulated controlled substance qualified as a counterfeit substance. *Id.* at 707. Recognizing that § 4B1.2 neither defined the term "counterfeit" nor imported the definition from the

_____

[2]Had the Commission wished to import the CSA definition, as Robertson urges this Court to do, it certainly could have. Indeed, the Commission's incorporation of federal statutory definitions in other guidelines provisions indicates its capability to do so. *See, e.g.*, U.S.S.G. § 1B1.1 cmt. n.1(F) (defining "destructive device" by reference to 26 U.S.C. § 5845(f)); U.S.S.G. § 2A2.3 cmt. n.3 (defining "substantial bodily injury" by reference to 18 U.S.C. § 113(b)(1)); U.S.S.G. § 2B1.1 cmt. n.1 (defining "trade secret" by reference to 18 U.S.C. § 1839(3)). Therefore, the Commission's failure to reference the CSA definition of "counterfeit" in the career offender provision evidences an intent to depart from it. *See Chernin v. Lyng*, 874 F.2d 501, 506 (8th Cir. 1989) (finding Federal Meat Packing Act that granted targeted employers, but not targeted employees, a right to a hearing "demonstrate[d] Congress's intent to exclude such employees from the administrative process").

Moreover, incorporation of the CSA definition of counterfeit substance would violate the "settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992). The CSA defines a counterfeit substance as "a controlled substance." 21 U.S.C. § 802(7). Therefore, to use this definition of counterfeit substance would effectively read out the word "or" in the phrase "controlled substance (*or* counterfeit substance)" used twice in § 4B1.2 (emphasis added).

CSA, the Fifth Circuit turned to the dictionary to discern the plain meaning of counterfeit. *Id*. at 707-09. We likewise adopt this procedure. *See United States v. Honken*, 184 F.3d 961, 969 (8th Cir. 1999) (using the dictionary to define the plain meaning of "extraordinary case" where the guidelines did not define it).

At issue is the phrase "counterfeit substance," but we believe that the definition of the single word counterfeit is dispositive. The dictionary defines the adjective counterfeit as "made in imitation of something else with intent to deceive: forged." Merriam-Webster's Collegiate Dictionary 285 (11th ed. 2005); *see also* Black's Law Dictionary 376 (8th ed. 2004) ("to unlawfully forge, copy or imitate an item . . . or to possess such an item without authorization and with the intent to deceive or defraud by presenting the item as genuine"). We agree with the conclusion in *Crittenden* that the plain meaning of counterfeit has two essential components: (1) made in imitation and (2) intent to deceive. *Crittenden*, 372 F.3d at 708; *cf. State Bank of Poplar Bluff v. Md. Cas. Co.*, 289 F.2d 544, 547-48 (8th Cir. 1961) (defining, in the negotiable instrument context, the noun counterfeit as "that which is made in imitation of something with a view to deceive"). Therefore, if a substance is made in imitation with an intent to deceive, it is "counterfeit" for the purposes of § 4B1.2 and qualifies as a controlled substance offense under the career offender provision.

Having reached this general conclusion, we follow *Crittenden*'s analysis and next examine the elements of the Illinois look-alike substance offense in order to determine if Robertson's look-alike substance conviction involved a substance that was made in imitation with an intent to deceive. *See Crittenden*, 372 F.3d at 708 (examining how the Texas code defined "simulated controlled substance" to determine if it matched the dictionary definition of counterfeit).

Robertson pled guilty to manufacturing/distributing a look-alike substance in violation of 720 Ill. Comp. Stat. 570/404(b). The Illinois code defines a "look-alike substance" as:

a substance, other than a controlled substance which (1) by overall dosage unit appearance, including shape, color, size, markings or lack thereof, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe that the substance is a controlled substance, or (2) is expressly or impliedly represented to be a controlled substance or is distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance.

720 Ill. Comp. Stat. 570/102(y).  The Texas statute at issue in *Crittenden* defined "simulated controlled substance" as one "that is *purported* to be a controlled substance, but is chemically different from the controlled substance it is purported to be."  *Crittenden*, 372 F.3d at 708 (quoting Texas Health & Safety Code Ann. § 482.001(4)) (emphasis added).  Unlike the Texas statute, the Illinois statute provides two alternative definitions for a look-alike substance.  Therefore, because the record does not reveal whether Robertson was convicted under (y)(1) or (y)(2), we must address both clauses of the Illinois look-alike substance statute independently to determine whether either or both accord with the plain meaning of counterfeit as used in § 4B1.2.

Facially, it is readily apparent that (y)(1) and (y)(2) each includes the "made-in-imitation" component of "counterfeit."  Turning to the "intent-to-deceive" component, the plain language in (y)(2)— "expressly or impliedly represented" and "distributed under circumstances which would lead a reasonable person to believe that the substance is a controlled substance"—clearly contains an intent-to-deceive element.  By contrast, the language of (y)(1) is not as clear.  Here, we depart from *Crittenden*'s analysis and defer to the Appellate Court of Illinois, which recently interpreted the meaning of this statute.[3]

---

[3]We note that although *Crittendon* did not look to Texas cases to aid the interpretation of the statute at issue in that case, we have found the procedure useful in the past when required to determine if a state-law conviction qualifies for a guidelines enhancement.  *See, e.g.*, *United States v. McCall*, 439 F.3d 967, 972-73 (8th Cir. 2006) (en banc) (relying on Supreme Court of Missouri decision to determine

In *People v. Anderson*, the court addressed the defendant's challenge to the sufficiency of the evidence to convict him of possession with intent to deliver a look-alike substance, the same statute under which Robertson was convicted. 848 N.E.2d 98, 101 (Ill. App. 2006), *appeal denied by* --- N.E.2d ---, 221 Ill. 2d 644 (Ill. Sep. 27, 2006). Anderson unsuccessfully attempted to sell crushed peanuts as crack cocaine. *Id*. at 100. Law enforcement discovered the peanuts in plastic baggies on Anderson's person after they arrested him for armed violence. *Id*. The arresting officer testified that upon first seeing the substance, he "immediately formed an assumption that it was crack cocaine," despite Anderson's statement to the officer that it was "just peanuts, man." *Id*. at 100-01. The *Anderson* court held that the defendant's ability to "pass off a phoney substance as real" by its "appearance and packaging" alone, was sufficient "to establish the substance as a look-alike under clause (1) of section 102(y)." *Id*. at 105. In other words, the *Anderson* court found the physical characteristics and appearance of the substance indicative of an intent to "pass off" the substance as real, and, therefore, sufficient to support a conviction under (y)(1). *Id*. Furthermore, we note that if (y)(1) is not read to contain an intent-to-deceive element, it would be capable of imposing criminal liability in some circumstances without proof of any criminal intent. *See United States v. Apfelbaum*, 445 U.S. 115, 131 (1980) ("In the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur."). Therefore, we conclude (y)(1) also contains an intent-to-deceive element.

The *Anderson* court also noted the "additional fact" that the defendant "represented the substance as crack cocaine" would also support a violation of (y)(2). *See id*. Therefore, we believe that *Anderson*'s reading of the look-alike statute suggests that both (y)(1) and (y)(2) have the necessary intent-to-deceive element, the

---

whether Missouri's DWI offense qualified as a violent felony under the Armed Career Criminal Act); *United States v. Johnson*, 417 F.3d 990, 998 (8th Cir. 2005) (bolstering the conclusion that the Missouri offense of tampering in the first degree qualified as a violent felony under the Armed Career Criminal Act by examining Missouri decisions).

former through its physical characteristics and the latter through representations or the circumstances under which it is presented. Because both (y)(1) and (y)(2) contain the made-in-imitation and intent-to-deceive elements, we conclude that both definitions of "look-alike substance" provided in the Illinois code satisfy the plain meaning of counterfeit. As such, Robertson's conviction under 720 Ill. Comp. Stat. 570/404(b) qualifies as a controlled substance offense for the purposes of § 4B1.2.

Robertson also challenges the district court's finding that his Illinois look-alike substance conviction was a felony drug conviction that doubled his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). Prior to sentencing, the Government filed a substantial assistance downward departure motion under § 5K1.1 and 18 U.S.C. § 3553(e), vesting the district court with authority to sentence Robertson below the statutory mandatory minimum. Because we affirm the district court's classification of Robertson as a career offender, the district court correctly determined Robertson's advisory guidelines range, prior to considering the departure motion, as 262 to 372 months. Because the Government's motion allowed the district court to depart below the applicable statutory minimum, be it ten or twenty years, and because the guidelines range before considering the downward departure motion exceeded either statutory minimum, we need not reach the issue of which statutory minimum applies.[4]

## III. CONCLUSION

For the foregoing reasons, we affirm Robertson's sentence.

––––––––––––––––––––––––––––––

---

[4]At oral argument, Robertson's counsel conceded that if we affirmed Robertson's career offender status, we need not reach the statutory mandatory minimum issue.