PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.　　　　　　　　　　　　　　　　　　No. 06-4776

ANDRE MILLS,
　　　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(1:05-cr-00419-CCB)

Argued: March 12, 2007

Decided: May 7, 2007

Before WILKINSON, MICHAEL, and KING, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Michael and Judge King joined.

---

## COUNSEL

**ARGUED:** John Hanjin Chun, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Jonathan Biran, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Sarah S. Gannett, Staff Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States

Attorney, Michael C. Hanlon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

This case presents the question of whether a conviction for a simulated controlled substance qualifies as a "controlled substance offense" under United States Sentencing Guidelines Section 2K2.1. Defendant Andre Mills pled guilty to possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (2000). The district court enhanced Mills' sentence on the grounds that his conviction for distributing simulated drugs was a "counterfeit substance" offense and thus a "controlled substance offense" within the meaning of § 2K2.1. On appeal, Mills argues that his prior simulated drug conviction is not a "controlled substance offense" because simulated drugs are not a "counterfeit substance" as defined by the Controlled Substances Act, 21 U.S.C. § 802(7) (2000). Because the Guidelines' provisions at issue here do not reference 21 U.S.C. § 802(7), and because the plain meaning of an undefined term controls in the absence of such a cross-reference, we find Mills' argument to be without merit and now affirm.

I.

This case arises out of a routine traffic stop in which Baltimore City police stopped and obtained consent to search the vehicle driven by Andre Mills. The officers recovered 120 rounds of Wolf FMJ-type 7.62 x 39 caliber ammunition — suitable for certain types of assault rifles — from inside Mills' trunk. Mills waived his *Miranda* rights and voluntarily told the officers that the ammunition went with an assault rifle that he kept at his clothing store, "Moonwear."

After obtaining a warrant, a team of officers searched the clothing store. The search team recovered a number of firearms from "Moonwear," including: an AR-15 assault rifle; a Taurus 9 millimeter hand-

gun; a Taurus .357 revolver; a 12-gauge "Maverick" shotgun; and a 9 millimeter Smith and Wesson handgun. In addition to the weapons, the search team discovered a stockpile of ammunition and a number of firearms-related items, including: two magazine speed loaders; pistol grips; a pistol laser sight; a 12-gauge Sidewinder conversion kit; and a side saddle shotgun shell holster.

Mills was indicted for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He subsequently waived indictment and pled guilty to an information charging him with unlawful possession of ammunition by a convicted felon, also in violation of 18 U.S.C. § 922(g)(1).

The Presentence Investigation Report detailed an extensive criminal history with a number of prior arrests and convictions, many for drug-related conduct, and recommended (over Mills' objection) a base offense level of 24. The PSR grounded its offense-level recommendation on Sentencing Guideline § 2K2.1(a)(2) which calls for a base level offense of 24 when a defendant has two prior felony convictions for either a "crime of violence" or a "controlled substance offense." *See* U.S.S.G. § 2K2.1 (2006). According to the PSR, Mills had two prior Maryland felony convictions which qualified him for a § 2K2.1(a)(2) sentencing enhancement: Possession with Intent to Distribute Look-A-Like Controlled Dangerous Substances and Resisting Arrest.

On July 7, 2006, the district court conducted a sentencing hearing and found the predicates for a § 2K2.1 sentencing enhancement to be met. The court held that the "plain meaning" of a "counterfeit substance" offense as that term is used in Section 4B1.2 includes a simulated drug conviction like Mills'. The court thus applied the sentence enhancement, arrived at a base offense level of 24, and sentenced Mills to 70 months of imprisonment.

Mills now appeals this sentence. He argues that the district court erred in enhancing his sentence pursuant to United States Sentencing Guideline Section 2K2.1 and that the proper base offense level for his offense is 20, not 24. Mills concedes that resisting arrest is a "crime of violence" and thus a qualifying predicate offense for a Section 2K2.1 enhancement, but claims that his second offense — the Mary-

land look-a-like narcotics conviction — is not a predicate "controlled substance offense" under § 2K2.1.

## II.

Section 2K2.1 provides the legal framework for calculating an offense level for the unlawful possession of firearms or ammunition in violation of, inter alia, 18 U.S.C. § 922(g)(1). This provision dictates a base offense level of 24 for defendants who are convicted as felons in possession of firearms or ammunition if:

> the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 2K2.1(a)(2). Section 2K2.1 defines the term "controlled substance offense" in reference to the "meaning given that term in § 4B1.2(b)." *Id.* (application note 1). Section 4B1.2(b), in turn, defines "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (*or a counterfeit substance*) or the possession of a controlled substance (*or counterfeit substance*) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b) (emphasis added).

## A.

In the case at hand, Mills was convicted of selling imitation narcotics in violation of Section 286B of Article 27 of the Maryland Code. Because this provision criminalizes the distribution of fake, rather than genuine, narcotics we must decide whether a conviction for simulated narcotics is one involving a "counterfeit substance" under § 4B1.2(b). The Guidelines do not, however, define the term "counterfeit substance" as employed in Section 4B1.2(b).

It is a cornerstone of statutory interpretation that an undefined term is construed "in accordance with its ordinary or natural meaning." *FDIC v. Meyer*, 510 U.S. 471, 476 (1994); *see Lopez v. Gonzales*, ___ U.S. ___, 127 S. Ct. 625, 630 (2006); *Smith v. United States*, 508 U.S. 223, 228 (1993); *United States v. Mitchell*, 39 F.3d 465, 468 (4th Cir. 1994). Because the Guidelines do not define "counterfeit substance," we turn to this cardinal principle of statutory construction, which applies with equal force to the United States Sentencing Guidelines. *United States v. Rouse*, 362 F.3d 256, 262 (4th Cir. 2004); *see United States v. John*, 935 F.2d 644, 646 (4th Cir. 1991).

The adjective "counterfeit" ordinarily means "[m]ade in imitation of something else . . . not genuine." *Oxford English Dictionary* Vol. III 1027 (2d ed. 1989); *see also Black's Law Dictionary* 376 (8th ed. 2004) (defining "counterfeit" as "an imitation intended to pass for an original"). Thus, for the purposes of a Section 2K2.1 sentencing enhancement (or career offender status), a substance "made in imitation of" a controlled substance is a "counterfeit substance."

At the time of Mills' conviction, Maryland's look-a-like drug statute, entitled, "Possession with Intent to Distribute Look-A-Like Controlled Dangerous Substances," provided:

> (b) A person may not distribute, attempt to distribute or possess with intent to distribute a noncontrolled substance upon the representation that the substance is a controlled dangerous substance.

> (c) It is unlawful for a person to distribute, attempt to distribute or possess with intent to distribute, any noncontrolled substance intended by that person for use or distribution as a controlled dangerous substance or under circumstances where one reasonably should know that the noncontrolled substance will be used or distributed for use as a controlled dangerous substance.

MD. CODE ANN., Crim. Law, art. 27, § 286B (1957) (current version at MD. CODE ANN., Crim. Law, § 5-617 (2002)).

A conviction under Section 286B of Article 27 of the Maryland Code plainly qualifies as a "counterfeit substance" conviction under Guideline § 4B1.2(b). The Maryland law punishes persons who distribute, attempt to distribute, or possess with intent to distribute a non-controlled substance "made in imitation" of a controlled dangerous substance. *See Oxford English Dictionary* Vol. III 1027 (2d ed. 1989). Since the "plain meaning" of "counterfeit substance" includes simulated controlled substances — like the purported heroin and cocaine trafficked by Mills — Mills' conviction is a "controlled substances offense" and a predicate felony for the purposes of a 2K2.1 sentencing enhancement.

### B.

Defendant does not dispute that his simulated drug conviction is a "counterfeit substance" offense as that term is ordinarily understood. He argues instead that "counterfeit substance" should be defined in reference to the Controlled Substances Act, 21 U.S.C. § 802(7). That provision speaks to the mislabeling and mispackaging of genuine controlled substances, not to the distribution of counterfeit controlled substances. It defines a "counterfeit substance" as:

> [A] controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

21 U.S.C. § 802(7). Defendant's attempt to incorporate this definition suffers from a fatal flaw: Neither of the Guidelines' provisions at issue here make any reference whatsoever to 21 U.S.C. § 802(7).

This omission is significant because the Sentencing Commission clearly knows how to cross-reference when it wants to. Guideline drafters have, in fact, transformed the technique into something of an art: The Sentencing Guidelines are a veritable maze of interlocking

sections and statutory cross-references. And the Guidelines at issue here are no exception. Section 4B1.2 expressly references a number of statutes. It defines "crime of violence" to include unlawful possession of a firearm as described in 26 U.S.C. § 5845(a). U.S.S.G. § 4B1.2 (application note 1). Likewise, Section 4B1.2 defines "controlled substances offense" to include (1) unlawful possession of a listed chemical in violation of 21 U.S.C. § 841(d)(1); (2) unlawful possession of controlled substances manufacturing equipment in violation of 21 U.S.C. § 843(a)(6); (3) maintenance of a place for facilitating a drug offense in violation of 21 U.S.C. § 856; and (4) use of a communications facility in aid of a drug offense in violation of 21 U.S.C. § 843(b). *Id.* For its part, § 2K2.1 incorporates by express reference the definition of "ammunition" found at 18 U.S.C. § 921(a)(17)(A); the definition of "firearm" found at 18 U.S.C. § 921(a)(3); and the definition of "destructive device" found at 26 U.S.C. § 5845(f). U.S.S.G. § 2K2.1 (application note 1).

Indeed, in a *separate* provision of the Sentencing Guidelines, the Commission makes express reference to § 802(7)'s definition of "counterfeit." Section 2D1.1, which provides the sentencing framework for drug-related offenses, states that the provision "also appl-[ies] to 'counterfeit' substances, which are defined in 21 U.S.C. § 802." U.S.S.G. § 2D1.1 (application note 2). In stark contrast, neither Section 2K2.1 nor Section 4B1.2 makes any reference to 21 U.S.C. § 802(7).

We cannot presume this omission to be inadvertent. Where the Commission "includes particular language in one section of a [Guideline] but omits it in another section . . . it is generally presumed that [the Commission] acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). So too here. Had the Commission intended for 21 U.S.C. § 802(7) to apply, it had only to say so. But it did not and we decline Mills' invitation to supply a cross-reference of our own.

Further, to bootstrap the federal definition of "counterfeit substance" into the Sentencing Guidelines "would violate the 'settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect.'" *United States v. Robertson*, 474 F.3d 538, 540 n.2 (8th Cir. 2007) (quoting *United States v. Nordic*

*Vill., Inc.*, 503 U.S. 30, 36 (1992)). Because the Controlled Sub-
stances Act defines a "counterfeit substance" as "a controlled sub-
stance," *see* 21 U.S.C. § 802(7), to use the federal definition "of
counterfeit substance would effectively read out the word 'or' in the
phrase 'controlled substance (*or* counterfeit substance)' used twice in
§ 4B1.2." *Robertson*, 474 F.3d at 540 n.2.

That Congress defines "counterfeit substance" under federal law
differently than a state may choose to define the term under state law
is not evidence that the Commission intended for something other
than the plain meaning of "counterfeit" to apply in Section 4B1.2.
Indeed, to apply the federal definition of "counterfeit" here would
completely read the word "state" out of Section 4B1.2. But the Sen-
tencing Commission, by specifying that federal *and* state violations
serve as predicate offenses for career offender status, clearly intended
for repeat offenders of *both* state and federal counterfeit crimes to be
subject to an enhanced sentence. *See* U.S.S.G. § 4B1.2(b). It is, more-
over, routine for states to criminalize conduct that carries no penalty
under federal law. And, of course, the state police power is not
grounded in a requirement that a parallel provision of federal law also
criminalize a defendant's conduct.

Here, defendant places great reliance on the fact that both Mary-
land and federal law distinguish between look-a-like drugs and coun-
terfeit substances — from this defendant concludes that "counterfeit"
is a "term of art." But, if Congress had wished to define counterfeit
in reference to a limited technical term, it would have included a
cross-reference to § 802(7), as it did elsewhere. *See* U.S.S.G. § 2D1.1
(application note 2). Further, there are many reasons to believe that
Congress did not intend "counterfeit" to be construed in the limited,
term-of-art sense suggested by defendant. To ascribe such a meaning
to "counterfeit" would subject a defendant to an enhanced sentence
based upon a prior conviction for the improper labeling of pharma-
ceuticals, but not for the distribution of simulated cocaine. This mean-
ing makes no sense in the context of the career offender Guidelines
— the whole purpose of which is to provide longer sentences for per-
sons who are repeatedly convicted of violent or drug-related offenses.
*See* U.S.S.G. § 4B1.1 (background).

Our conclusion that the definition of "controlled substance offense"
found in Section 4B1.2(b) encompasses look-a-like drug convictions

is supported by the case law. Every court to consider the issue has concluded, as we now hold, that state simulated or look-a-like drug convictions are "counterfeit substance" offenses under Section 4B1.2(b). *See, e.g.*, *Robertson*, 474 F.3d at 543 (holding prior Illinois conviction for manufacture or distribution of "look-a-like" substance a "controlled substance offense"); *United States v. Crittenden*, 372 F.3d 706 (5th Cir. 2004) (holding prior Texas conviction for delivery of simulated controlled substance a "controlled substance offense"); *United States v. Evans*, 358 F.3d 1311 (11th Cir. 2004) (holding prior conviction involving delivery of chalk, rather than cocaine, a "controlled substance offense").

## C.

In a last effort to avoid the logical consequences of the Guidelines' omission of any reference to § 802(7), Mills argues that simulated drug convictions do not qualify as predicate offenses under the career offender Sentencing Guidelines because those crimes are not enumerated in Section 994(h) of Title 28. That provision, which authorizes the Sentencing Commission to formulate the career offender provisions of the Sentencing Guidelines, provides that the offenses described within the Controlled Substances Act, *see* 21 U.S.C. § 841, qualify as predicate offenses. 28 U.S.C. § 994(h) (2000). Mills thus claims, because the Controlled Substances Act does not regulate the distribution of simulated controlled substances, that Section 994(h) evidences Congress' intent to exclude look-a-like convictions from the career offender Guidelines.

We disagree. The fact that Congress delineated some crimes that qualify as predicate offenses under Section 4B1.1 does not prohibit the Sentencing Commission from promulgating guidelines that reach other offenses too. To the contrary, the Commission has authority to "depart, as need be, from the Controlled Substances Act's definition of controlled substance offense (and, in turn, counterfeit controlled substance), in order to avoid sentencing disparities." *Crittenden*, 372 F.3d at 709. As the background notes to Section 4B1.1 explain, such modification is consistent with the Commission's "general guideline promulgation authority under 28 U.S.C. § 994(a)-(f), and its amendment authority under 28 U.S.C. § 994(o) and (p)." U.S.S.G. § 4B1.1 (background).

Moreover, to adopt defendant's view — that only those offenses listed in Section 994(h) qualify as predicate offenses for purposes of Section 4B1.1 — would mean that the Commission had exceeded its authority by including other narcotics-related offenses. *See Crittenden*, 372 F.3d at 709. To begin with, Section 994(h) makes no mention of state drug offenses at all; but no one disputes that state law convictions for violent felonies and controlled substance felonies are within the ambit of the career offender Guidelines. Likewise, defendant's reading of the statute would invalidate the Commission's inclusion of "the offenses of aiding and abetting, conspiring, and attempting to commit" controlled substance offenses, *see* U.S.S.G. § 4B1.2 (application note 1), since those offenses are altogether absent from the dictates of Section 994(h). In light of the Commission's authority to modify the guidelines in order to "avoid unwarranted sentencing disparities" and to "focus more precisely" on "recidivist offenders," U.S.S.G. § 4B1.1 (background), we decline defendant's invitation to so substantially rewrite the career offender provisions of the Sentencing Guidelines.

## III.

There is simply no reason to assume that the Commission meant something different than the plain meaning of "counterfeit" in the career offender provisions of the Sentencing Guidelines. The purpose of the career offender Guidelines is to ensure that "substantial prison terms" are imposed "on repeat violent offenders and repeat drug traffickers." *See* U.S.S.G. § 4B1.1 (background) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 175 (1983)). Thus, "Section 994(h) of Title 28 . . . mandates that the Commission assure that certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.'" *Id.* (quoting 28 U.S.C. § 994(h)).

To construe Section 2K2.1 to impose a heightened base offense level upon a prior conviction for the sale of an improperly labeled pharmaceutical, but not for the sale of imitation cocaine, makes no sense in the context of the career offender Guidelines. There are, in fact, a number of good reasons for the Commission to include persons who distribute simulated drugs within the class of recidivist offenders subject to longer terms. To begin with, the "sale of simulated controlled substances carries with it the same dangers of violence as the

sale of a controlled substance, as well as many, if not most, of the numerous other egregious harms flowing from such sales." *Crittenden*, 372 F.3d at 709-10. In both instances, there is no small danger of, for example, retaliation by disgruntled customers, turf warfare, street rivalry, and robbery attempts or other criminal activity by customers or competitors. Indeed, simulated drug purchasers will not generally know that a substance they are purchasing is fake. And, in the event an imitation is discovered, the risk of violence may well increase, rather than decrease.

This case is a good example. On June 29, 1999, Baltimore City police observed Mills engaging in what looked to be a classic street-level drug transaction. Mills was approached by customer after customer; after a brief conversation, he would duck into a side alley to retrieve his illegal product, which he exchanged for cash in a hand-to-hand transaction. Since Mills' conduct was indistinguishable from a "real" controlled substance violation, it necessarily involved many, if not all, of the dangers associated with "real" drugs.

Indeed, the Maryland General Assembly promulgated the provision at issue in this case in an effort to remedy many of the same problems associated with genuine narcotics. The Maryland legislature was aware that the proliferation of look-a-like substances had become a "real threat to . . . young people" and had rendered the identification of real controlled substances difficult. *See Robinson v. Maryland*, 702 A.2d 741, 751 & n.16 (Md. 1997).

To hold that look-a-like drug convictions are not predicate offenses for purposes of the career offender Guidelines would run afoul of Congress' mandate to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (2000). Drug traffickers who happen to have look-a-like drugs on hand when they are arrested would be subject to much lower sentences. But, as this case illustrates, defendants who are convicted of selling fake drugs and defendants who are convicted of selling genuine narcotics "have been found guilty of similar conduct." *Id.* To fail to recognize this similarity would create an "unwarranted sentencing disparit[y]" of the sort Congress and the Commission have sought to avoid.

## IV.

For the foregoing reasons, Mills' sentence is affirmed.

*AFFIRMED*