In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3518

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

IRVIN S. HUDSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:09-CR-00053(01)RM—**Robert L. Miller, Jr.**, *Judge.*

ARGUED APRIL 2, 2010—DECIDED AUGUST 24, 2010

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

WOOD, *Circuit Judge.* This case raises a surprisingly complicated question: under the Sentencing Guidelines, are crimes involving phony versions of illegal drugs properly characterized as "controlled-substance offenses"? Irvin Hudson pleaded guilty to possession of a firearm as a felon and possession of a stolen firearm. Hudson's recommended sentence under the guidelines depends on the nature of his previous offense: if his

earlier conviction amounted to a "controlled-substance offense," then the guidelines would recommend a longer sentence. Before he was caught with the gun, Hudson had been convicted in the Indiana state courts of the crime of dealing in a substance represented to be a controlled substance (marijuana)—a so-called "look-alike" drug offense. The district court concluded that Hudson's Indiana conviction qualified as a controlled-substance offense, calculated the guidelines range on that basis, and sentenced him to a within-guidelines sentence of 72 months' imprisonment. Hudson appeals his sentence to this court.

This appeal turns on how to classify Indiana's look-alike drug crimes. The Sentencing Guidelines specifically define controlled-substance offenses to include crimes related to controlled substances or "counterfeit substances." The district court and the government rely on the plain meaning of "counterfeit" to sweep in Hudson's look-alike offense. Hudson responds that look-alikes literally are neither controlled substances nor counterfeit substances. He observes that different parts of the guidelines, federal drug laws, and Indiana law define the term "counterfeit substance" in a manner that would not include faux marijuana. Those provisions limit the definition of "counterfeit substance" to controlled substances that bear false designations of source and thus appear to have been legitimately manufactured or distributed, rather like the apocryphal "Rolex" watches that can be bought on some streets for $10 apiece. Although Hudson's argument gives us pause, we join our sister circuits in the view that "look-alike" offenses

constitute controlled-substance offenses for sentencing purposes.

## I

We begin with a survey of Indiana's drug offenses. Indiana law creates three categories of drug crimes, the first of which addresses certain conduct related to controlled substances. See IND. CODE §§ 35-48-4-1 *et seq.* This case does not involve that part of the law.

Second, Indiana, like many states, has counterfeit-substance crimes. See *id.* § 35-48-4-5 (criminalizing creating, delivering, financing the delivery of, or possessing with the intent to deliver or finance the delivery of a counterfeit substance). Indiana's definition of "counterfeit substance," like the corresponding federal definition, does not include non-controlled substances passed off as street drugs. Compare *id.* § 35-48-1-10 (" 'Counterfeit substance' means a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.") with 21 U.S.C. § 802(7) ("The term 'counterfeit substance' means a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in

fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser."). Hudson was not charged with a counterfeit-substance offense under Indiana law.

Third and finally, Indiana law establishes "look-alike" drug offenses. See IND. CODE § 35-48-4-4.5 & -4.6. As mentioned earlier, look-alikes are non-controlled substances held out as controlled substances. See, *e.g.*, *United States v. Williams*, 553 U.S. 285, 317-18, 320 (2008) (Souter, J., dissenting) (discussing virtual child pornography by analogy to a drug dealer selling baking powder instead of powder cocaine); *Conner v. State*, 626 N.E.2d 803, 805 (Ind. 1993) (discussing the sentence for selling oregano held out as marijuana); *State v. Wilson*, 466 N.W.2d 101 (N.D. 1991) (discussing sale of parsley masquerading as marijuana). Compare *NY court sniffs at ex-cop's drugged-dinner claim*, ASSOCIATED PRESS (Feb. 5, 2010) (describing individual's claim that his failed drug test could be explained by his wife's *sub rosa* substitution of marijuana for oregano in a recipe for meatballs). Hudson was convicted of the following look-alike drug offense:

> A person who knowingly or intentionally delivers or finances the delivery of any substance, other than a controlled substance or a drug for which a prescription is required under federal or state law, that:
>
> > (1) Is expressly or impliedly represented to be a controlled substance;

(2) Is distributed under circumstances that would lead a reasonable person to believe that the substance is a controlled substance; or

(3) By overall dosage unit appearance, including shape, color, size, markings, or lack of markings, taste, consistency, or any other identifying physical characteristic of the substance, would lead a reasonable person to believe the substance is a controlled substance;

commits dealing in a substance represented to be a controlled substance, a Class D felony.

IND. CODE § 35-48-4-4.5(a). We turn now to the interaction between this state-law conviction and the district court's calculation of the guidelines range for Hudson's federal case.

## II

Hudson pleaded guilty to one count of possessing a firearm as a felon and one count of possessing a firearm knowing or having reason to believe it was stolen. See 18 U.S.C. § 922(g)(1) & (j). Pursuant to U.S.S.G. § 2K2.1(a)(6), the base level for prohibited persons convicted of a firearms offense would be 14. If the defendant committed the firearms offense after being convicted of a felony-level controlled-substance offense, however, the guidelines provide for a base level of 20. U.S.S.G. § 2K2.1(a)(4)(A). Hudson's rap sheet places him in criminal history category III, meaning that a previous conviction for a controlled-substance offense would

move him from a guidelines range of 37 to 46 months' imprisonment (base level 14) to a recommended sentence of 70 to 87 months (base level 20). Finding that Hudson was convicted of a controlled substance offense—the Indiana look-alike crime—the district court concluded that the latter range applied and that 72 months' imprisonment represented a just sentence.

Hudson does not challenge the district court's mathematical computation of the guidelines range or the substantive reasonableness of his sentence. Rather, his appeal focuses on the narrow question whether the district court was correct to assign him a base level of 20, relying on the look-alike drug conviction as a prior controlled-substance offense.

The logic of the district court (and the government) is straightforward. The application notes to the relevant guideline provide that the term "controlled substance offense" takes the meaning given in U.S.S.G. § 4B1.2. See U.S.S.G. § 2K2.1 n.1. Section 4B1.2 defines the term "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). This definition lays out our guideposts: controlled-substance offenses include state-law offenses related to controlled or counterfeit substances

punishable by imprisonment for a term exceeding one year. Hudson was convicted of an Indiana offense related to a substance masquerading as a controlled substance, not under Indiana's law addressing counterfeit substances. The federal guideline, however, does not define the term "counterfeit substance." There is no reason why the guidelines must be restricted to a particular state's concept of what is meant by that term. Viewed broadly, what Hudson sold could be seen as a "counterfeit" version of an illegal drug. See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 285 (11th ed. 2005) (defining "counterfeit" as "made in imitation of something else with intent to deceive: forged"). See also *United States v. Mills*, 485 F.3d 219, 222 (4th Cir. 2007) (citing the OXFORD ENGLISH DICTIONARY and BLACK'S LAW DICTIONARY, and concluding that a Maryland look-alike offense qualifies as a controlled-substance offense under the guidelines because it dealt with a substance "made in imitation of" a controlled substance). Conviction of the Indiana look-alike offense is punishable by imprisonment for a term exceeding one year. See IND. CODE § 35-50-2-7(a) ("A person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years . . . ."). Using an independent federal definition of the term thus supports the conclusion that Hudson was convicted of a controlled-substance offense for dealing counterfeit marijuana.

Hudson asks us to look more deeply into the meaning of "counterfeit substance" and to reject the government's "plain meaning" argument. Neither section of the Sentencing Guidelines described above defines the term

"counterfeit substance." If we look at the Sentencing Guidelines as a whole, however, we find that the Commission has defined the term "counterfeit substance" elsewhere. In the section of the guidelines establishing the punishment for drug crimes, U.S.S.G. § 2D1.1, the application notes provide:

> The statute [21 U.S.C. § 841] and guideline also apply to "counterfeit" substances, which are defined in 21 U.S.C. § 802 to mean controlled substances that are falsely labeled so as to appear to have been legitimately manufactured or distributed.

U.S.S.G. § 2D1.1 n.2. This note is a shorthand version of the statutory definition of "counterfeit substance," 21 U.S.C. § 802, which we have quoted in full above. This statutory definition, as we also noted, is substantively similar to the definition of that term in Indiana law, IND. CODE § 35-48-1-10. These definitions demonstrate that, at least for some purposes, both federal law and Indiana law consider the category "counterfeit substances" to exclude look-alikes. Hudson asks us to incorporate this definition into U.S.S.G. § 4B1.2(b) and, correspondingly, into U.S.S.G. § 2K2.1. See *United States v. Crittenden*, 372 F.3d 706, 711-14 (5th Cir. 2004) (Dennis, J., concurring in part and dissenting in part) (arguing for this position with respect to Texas's look-alike offense).

Counsel for Hudson presented a responsible argument, which has convinced some judges that look-alike offenses are not controlled-substance offenses. His position may be worth the attention of the Sentencing Commission or other courts. But, in the end, we are not per-

suaded. To begin with, we are not writing on a blank slate. At least four of our sister circuits have adopted the government's intuitive interpretation of the Sentencing Guidelines and have classified look-alike offenses as controlled-substance offenses. See *Mills*, 485 F.3d 219; *United States v. Robertson*, 474 F.3d 538 (8th Cir. 2007); *Crittenden*, 372 F.3d 706; *United States v. Evans*, 358 F.3d 1311 (11th Cir. 2004); but see *Crittenden*, 372 F.3d at 710-14 (Dennis, J., concurring in part and dissenting in part); *United States v. Frazier*, 89 F.3d 1501, 1508-10 (11th Cir. 1996) (Godbold, J., concurring in part and dissenting in part).

But our conclusion is supported by more than our desire to avoid creating a conflict among the circuits. See CIR. R. 40(e). The Sentencing Commission frequently makes use of an explicit cross-reference to incorporate one provision or definition into another. See, *e.g.*, U.S.S.G. § 2D1.1 n.3 (drawing the definitions of "dangerous weapon" and "firearm" from the Commentary to U.S.S.G. § 1B1.1); U.S.S.G. § 2D1.1 n.5 (defining "analogue" by incorporating the definition of "controlled substance analogue" from 21 U.S.C. § 802(32)). See also U.S.S.G. § 1B1.5 (setting the rules of interpretation for internal cross-references). Indeed, the Commission's definition of "controlled substance offense" appears in this case only through a cross-reference. See U.S.S.G. § 2K2.1 n.1 (referring to § 4B1.2(b)). Yet there is no cross-reference to the definition of "counterfeit substance" in application note 2 of § 2D1.1, which applies to Hudson's sentence. We must give meaning to the Sentencing Commission's silences as well as its words.

Furthermore, although we do not find the policy arguments to be one-sided, there are practical reasons to accept the government's definition. The government has a point when it argues that it would be nonsensical to punish the selling of controlled substances and mislabeled prescription drugs but not the selling of look-alikes. Look-alike drug transactions impose many of the same externalities as controlled-substance transactions. See, *e.g.*, *Crittenden*, 372 F.3d at 709-10. The Supreme Court has commented that, for some illegal drugs including marijuana, there exists an "established, albeit illegal, interstate market." See *Gonzales v. Raich*, 545 U.S. 1, 18 (2005). We agree with the government that it would be odd to read the Sentencing Guidelines to exclude prior convictions that contribute to that illegal market, even if the underlying conduct involved a look-alike. Although we can imagine reasons for the distinction that Hudson advances—*e.g.*, that the Commission focused on inherently dangerous substances rather than illegal markets—we find the government's theory persuasive, especially in light of the mounting weight of appellate-court decisions on its side.

Finally, the government draws our attention to the reference in the guidelines to "federal or state" controlled-substance offenses. The government reads this as a signal that the district courts should count all state offenses, including look-alike crimes. Many of the courts of appeals have accepted this view. See, *e.g.*, *Mills*, 485 F.3d at 223-24. With respect, we do not find this argument very helpful. The reference to federal or state law says nothing about the definition of a "counterfeit sub-

stance," and for all we know the Commission intended to adopt Congress's definition of "counterfeit substance" and to respect the distinction many states (including Indiana) acknowledge between something with a false label of origin and something that is actually not a controlled substance. Yet this does not mean that the government's reading is unsupportable. Indeed, we find it to be the best option for understanding this provision. Given the natural meaning of "counterfeit" and the overall purpose of the guidelines provisions, we decline to adopt Hudson's narrow definition of "counterfeit offense" as applied to U.S.S.G. § 2K2.1.

For these reasons, the judgment of the district court is AFFIRMED.