UNITED STATES of America,
Plaintiff–Appellee,

v.

Aquileo MELCHOR–ZARAGOZA,
Defendant–Appellant.

United States of America,
Plaintiff–Appellee,

v.

Ignacio Garcia–Rebollar, Defendant–
Appellant.

Nos. 02–10314, 02–10628.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 2003.

Filed Dec. 9, 2003.

926

Nancy Hinchcliffe and Michael S. Reeves, Phoenix, Arizona, for the appellants.

Lisa Jennis Settel, Assistant U.S. Attorney, Phoenix, Arizona, for the appellee.

Before THOMPSON, TROTT, and CALLAHAN, Circuit Judges.

DAVID R. THOMPSON, Senior Circuit Judge.

This appeal raises a question of first impression in this circuit: When a defendant is convicted of a conspiracy involving multiple victims, is it proper for the sentencing court to divide the conspiracy conviction into separate count groups based on the number of victims under U.S.S.G. §§ 1B1.2(d) and 3D1.2? We answer this question in the affirmative. We also conclude that the preponderance of the evidence standard applied to the court's determination of how many victims there were, and that this standard was satisfied. Thus, we affirm this aspect of Melchor–Zaragoza's ("Melchor's") sentence.[1]

1. In a memorandum disposition filed concurrently with this opinion, we resolve other issues involved in the consolidated appeals of Melchor and his co-defendant, Garcia–Rebollar.

## I.

In a superseding indictment filed on June 26, 2001, Melchor and three other individuals were charged with (1) conspiracy to commit hostage taking (18 U.S.C. §§ 1203 and 371); (2) hostage taking (18 U.S.C. § 1203); (3) conspiracy to harbor illegal aliens (8 U.S.C. §§ 1324(a)(1)(A)(iii) and (a)(1)(A)(v)(I)); (4) harboring illegal aliens (8 U.S.C. § 1324(a)(1)(A)(iii)); (5) possession or use of a firearm in a crime of violence (18 U.S.C. § 924(c)); and (6) reentry after deportation (8 U.S.C. § 1326(a) enhanced by (b)(1)).

The indictment alleged that on or about March 23, 2000, the defendants conspired to kidnap 23 illegal aliens from a group of smugglers. The defendants allegedly seized the aliens at gunpoint and kept them hostage while attempting to compel relatives or friends to pay money for their release. Melchor entered a plea of guilty to Count 6, and a jury returned a verdict of guilty on Counts 1 through 5.

In determining Melchor's sentence, the district court adopted the recommendations of the Presentence Report. Counts 1 through 4 were grouped as to victim Noe Perez–Valtierra (Count Group 1), victim Jorge Camacho Sanchez (Count Group 2), and victim Apolinar Valtierra–Guerrera (Count Group 3). Counts 1 and 3 were grouped as to unnamed victims 4 through 23 (Count Groups 4 through 23). Count 6 constituted Count Group 24.

Under U.S.S.G. § 3D1.4, Count Groups 1 through 23 translated into 23 units, which resulted in a five-level increase in the combined offense level. The combined adjusted offense level was 37. Based on this total offense level of 37 and Melchor's criminal history category of III, the guideline range for imprisonment was 262 to 327 months.

The court sentenced Melchor to 327 months on Counts 1 and 2, 120 months on Counts 3, 4, and 6 (to run concurrently), and 84 months on Count 5 (to run consecutively), for a total of 411 months of imprisonment. Melchor also received a fiveyear term of supervised release.

## II.

On appeal, Melchor contends that the district court erred by dividing the 23 victims into separate count groups, thereby increasing the combined offense level by five levels. Melchor also contends that the Government was required to prove by clear and convincing evidence the number of victims. Melchor maintains that the Government did not meet this burden.

### A. *Count Groups*

■■■ We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Boos,* 127 F.3d 1207, 1209 (9th Cir.1997), *cert. denied,* 522 U.S. 1066, 118 S.Ct. 734, 139 L.Ed.2d 672 (1998). Specifically, we review de novo its decision regarding grouping. *Id.*

U.S.S.G. § 1B1.2(d) provides that "[a] conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."

Similarly, under U.S.S.G. § 3D1.2, "a sentencing court may treat a conspiracy count as if it were several counts, each one charging conspiracy to commit one of the substantive offenses, when a defendant is convicted of conspiring to commit several substantive offenses and also convicted of committing one or more of the underlying substantive offenses."

The issue before us is whether a conspiracy to take several hostages should be treated as separate "offenses" committed against separate victims for purposes of §§ 3D1.2 and 1B1.2. The Eleventh Circuit squarely addressed this issue in *United States v. Torrealba*, 339 F.3d 1238 (11th Cir.2003).

In *Torrealba*, the defendant was convicted of conspiracy to commit hostage taking, hostage taking, and carrying a firearm during and in relation to a federal crime of violence. At sentencing, the district court divided the defendant's conspiracy conviction into three distinct groups based on three victims pursuant to U.S.S.G. §§ 1B1.2(d) and 3D1.2.

■ On appeal, the Eleventh Circuit determined that the district court properly divided the defendant's conspiracy conviction into separate offenses. *Torrealba*, 339 F.3d at 1242. "Thus, where a conspiracy involves multiple victims, the defendant should be deemed to have conspired to commit an equal number of substantive offenses, and the conspiracy count should be divided under § 3D1.2 into that same number of distinct crimes for sentencing purposes." *Id.* at 1243. *See also United States v. Jose–Gonzalez*, 291 F.3d 697, 707(10th Cir.2002) ("When ... the gist of the offense is injury to persons, the offense against each human victim belongs in a different group, even when the offenses arose out of a single event.")

In reaching its conclusion that the district court properly grouped the taking of each hostage separately for sentencing purposes, the Eleventh Circuit was guided by commentary note 8 to § 3D1.2. The second paragraph of the *Background* portion of note 8 explains:

A primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior. *Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together.*

U.S.S.G. § 3D1.2, cmt. n. 8 (emphasis added).

We are persuaded by the reasoning of *Torrealba*. The 23 victims who were held hostage suffered separate harms. The district court did not err in treating the taking of each hostage as a separate offense under §§ 3D1.2 and 1B1.2(d) and dividing the conspiracy conviction into 23 separate count groups.

### B. *Burden of Proof*

■ Ordinarily, application of the preponderance of the evidence standard of proof to Guidelines factors satisfies due process. *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (en banc), *cert. denied*, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992). However, "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction...." *Id.* at 659–60.

■ We have identified six factors to consider in determining whether due process requires the application of a heightened evidentiary standard: (1) Does the enhanced sentence fall within the maxi-

mum sentence for the crime alleged in the indictment?; (2) Does the enhanced sentence negate the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment?; (3) Do the facts offered in support of the enhancement create new offenses requiring separate punishment?; (4) Is the increase in sentence based on the extent of a conspiracy?; (5) Is the increase in the number of offense levels less than or equal to four?; and (6) Is the length of the enhanced sentence more than double the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence? *United States v. Johansson*, 249 F.3d 848, 854 (9th Cir.2001).

The fourth factor controls our analysis. We have applied the preponderance of the evidence standard where an increase in sentence is based on the *extent of a conspiracy* as opposed to uncharged conduct. *See United States v. Riley*, 335 F.3d 919 (9th Cir.2003); *United States v. Harrison–Philpot*, 978 F.2d 1520 (9th Cir.1992), *cert. denied*, 508 U.S. 929, 113 S.Ct. 2392, 124 L.Ed.2d 294 (1993).

In *Harrison–Philpot*, we held that the district court should have applied the preponderance of the evidence standard to determine the quantity of drugs involved in a conspiracy to distribute. *Id.* at 1524. Similarly, in *Riley*, where the defendant was convicted of one count of conspiracy to produce fictitious obligations, we held that the preponderance of the evidence standard applied to a sentencing enhancement based on the conspiracy's total intended loss and the possession of five or more means of identification.

As in *Harrison–Philpot* and *Riley*, the increase in Melchor's sentence resulting from the number of victims was based on the extent of the conspiracy. Accordingly, the preponderance of the evidence standard applies.

 Applying this standard to the facts, the district court did not err in concluding that there had been 23 victims. At trial, Mary Aguirre, one of the co-conspirators, testified that 23 aliens were taken hostage by the conspirators on the night of March 23, 2000. This evidence is sufficient to support the district court's finding that there were 23 victims of the conspiracy.

AFFIRMED.