# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

JOSE DAVID LEAL-VEGA,
  *Defendant-Appellee.*

No. 11-50065

D.C. No.
2:10-CR-00756-
PSG-1

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
April 11, 2012—Pasadena, California

Filed May 30, 2012

Before: Andrew J. Kleinfeld and Milan D. Smith, Jr.,
Circuit Judges, and Algenon L. Marbley, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Algenon L. Marbley, District Judge for the United
States District Court for the Southern District of Ohio, sitting by designa-
tion.

5953

## COUNSEL

Peter William Baldwin, Curtis Arthur Kin, and Jean-Claude Andre (argued), Office of the United States Attorney, Los Angeles, California, for plaintiff-appellant United States of America.

Carlton Gunn (argued), Kaye McLane & Bednarski, LLP, Pasadena, California, for defendant-appellee Jose Leal-Vega.

## OPINION

M. SMITH, Circuit Judge:

The United States of America (Government) appeals the thirty-months sentence imposed on Jose Leal-Vega for illegal reentry following deportation. The district court declined to apply a sixteen-level enhancement pursuant to United States

Sentencing Guidelines, U.S.S.G. § 2L1.2, for Leal-Vega's prior conviction under California Health & Safety Code § 11351. The Government contends that the sixteen-level enhancement should have been applied because Section 11351 is categorically a "drug trafficking offense" under U.S.S.G. § 2L1.2. Alternatively, the Government contends that even if Section 11351 does not categorically qualify, Leal-Vega's conviction qualifies as a "drug trafficking offense" applying the modified categorical analysis because the substance involved was tar heroin, a substance covered by the federal Controlled Substances Act (CSA), 21 U.S.C. § 801 *et seq.*

We hold that a conviction under Section 11351 does not qualify categorically as a "drug trafficking offense" for the purposes of U.S.S.G. § 2L1.2. However, we hold that Leal-Vega's prior Section 11351 conviction qualifies as a "drug trafficking offense" using the modified categorical approach, and we reverse and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 1999, Leal-Vega was charged in Count 1 of a felony complaint with "committ[ing] a violation of Health and Safety Code section 11351, a felony, in that on or about March 1, 1999, in the County of Riverside, State of California, [he] did wilfully and unlawfully possess for sale and purchase for purpose of sale a controlled substance, to wit, TAR HEROIN." He was concurrently charged with another count. Leal-Vega pled guilty to Count 1, and the second count was dismissed.

On August 23, 2010, Leal-Vega pled guilty to illegal reentry following deportation, under 8 U.S.C. § 1326. The information charged Leal-Vega with a prior 1999 felony conviction for possession of a controlled substance for sale, in violation of California Health & Safety Code § 11351.

In the Presentence Report (PSR), the Probation Office rec-
ommended a sixteen-level enhancement based on the prior
conviction, which it categorized as a "drug trafficking
offense." Leal-Vega objected to this categorization, arguing
that Section 11351 is categorically broader than the Sentenc-
ing Guidelines's definition of a "drug trafficking offense."
After initially arguing that Section 11351 was a categorical
fit, the Government later conceded that the statute was too
broad. Prior to sentencing, the district court requested more
information for the purpose of conducting the modified cate-
gorical analysis. The Government subsequently retracted its
concession regarding the inapplicability of the categorical
analysis to Section 11351, and claimed that since the Sentenc-
ing Guidelines do not incorporate the CSA's definition of
"controlled substance," Section 11351 is not overbroad, and
that the statute is a categorical fit.

The district court concluded that Section 11351 was not
categorically a "drug trafficking offense," and also found that
the record of conviction for Leal-Vega's 1999 conviction was
insufficient to establish a modified categorical fit. Thus, the
district court only applied a four-level sentence enhancement,[1]
and imposed a sentence of thirty months imprisonment, based
on a calculated Guidelines range of twenty-four to thirty
months. The Government timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291.

We review de novo the district court's interpretation of the
Sentencing Guidelines. *United States v. Cantrell*, 433 F.3d
1269, 1279 (9th Cir. 2006). We review the district court's
application of the Sentencing Guidelines for abuse of discre-
tion. *Id.*

---

[1]This four-level enhancement is based on other prior felony convictions,
which are not at issue in this appeal.

## DISCUSSION

**[1]** The crime of unlawfully entering the United States under 8 U.S.C. § 1326 carries a base offense level of 8 under the Sentencing Guidelines. U.S.S.G. § 2L1.2; *see United States v. Ballesteros-Ruiz*, 319 F.3d 1101, 1102 (9th Cir. 2003). A defendant's base offense level may be increased by sixteen levels if he has a prior conviction for a "drug trafficking offense," and the sentence on the prior conviction exceeded thirteen months. U.S.S.G. § 2L1.2(b)(1)(A). The Sentencing Guidelines define "drug trafficking offense" as:

> [A]n offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a *controlled substance* (or a counterfeit substance) or the possession of a *controlled substance*.

*Id.* § 2L1.2, Application Notes (1)(B)(iv) (emphasis added).

**[2]** We apply the categorical and modified categorical approaches described in *Taylor v. United States*, 495 U.S. 575 (1990), to determine whether a defendant's prior conviction satisfies U.S.S.G. § 2L1.2(b)(1)(A). *United States v. Pimentel-Flores*, 339 F.3d 959, 968 (9th Cir. 2003). We first apply the categorical analysis. Under this approach, we "do not examine the facts underlying the prior offense, but look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 967 (quoting *United States v. Corona-Sanchez*, 291 F.3d 1201, 1203 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S.S.G. § 2L.1, CMT n. 4 (2002)). If the statutory definition of the prior offense criminalizes conduct that would not constitute a "drug trafficking offense," then the statute is not a categorical fit, and we must consider whether the prior conviction may still be used for a sentencing enhancement using the modified categorical approach. *Id.* We may not use the conviction for a sentencing enhancement unless "the record includes

documentation or judicially noticeable facts that clearly estab-
lish that the conviction is a predicate for enhancement pur-
poses." *Id.* (quoting *Corona-Sanchez*, 291 F.3d at 1203).
Finally, if both the statute and the documents containing judi-
cially noticeable facts would allow the defendant to be con-
victed of an offense that would not be a "drug trafficking
offense," then the sentencing enhancement may not be
applied. *See Corona-Sanchez*, 291 F.3d at 1203-04.

[3] The predicate offense here, California Health & Safety
Code § 11351, criminalizes "possess[ion] for sale or pur-
chases for purposes of sale (1) any controlled substance speci-
fied in subdivision (b), (c), or (e) of Section 11054, specified
in paragraph (14), (15), or (20) of subdivision (d) of Section
11054, or specified in subdivision (b) or (c) of Section 11055,
or specified in subdivision (h) of Section 11056, or (2) any
controlled substance classified in Schedule III, IV, or V which
is a narcotic drug." Cal. Health & Safety Code § 11351.

## I.    Categorical Analysis

Applying the initial step in the *Taylor* analysis, we first
determine whether Section 11351 categorically qualifies as a
"drug trafficking offense," as defined under the Sentencing
Guidelines. In particular, we must determine how to interpret
the term "controlled substance," as it is used in the Sentencing
Guidelines definition. If we construe the term as being tied to
the federal definition of controlled substances from the CSA,
Section 11351 cannot qualify categorically because it crimi-
nalizes possession or purchase of substances that are not
included in the CSA. *See infra.* However, were we to adopt
the definition of "controlled substance" urged by the
Government—that it takes on its ordinary, common sense
meaning, as a drug regulated by law—Section 11351 would
automatically qualify categorically.

While we have not applied the *Taylor* categorical analysis
to determine whether various California drug statutes would

qualify as a "drug trafficking offense" in the Sentencing Guidelines context, we have found occasion to do so in the immigration framework. First, in *Ruiz-Vidal v. Gonzalez*, 473 F.3d 1072 (9th Cir. 2007), we held that California Health & Safety Code § 11377 could not serve as a predicate offense for removal under 8 U.S.C. § 1227(a). We stated that there was no categorical fit because "California law regulates the possession and sale of numerous substances that are not similarly regulated by the CSA." *Id.* at 1078. Next, in *Mielewczyk v. Holder*, 575 F.3d 992, 995 (9th Cir. 2009), we held that California Health & Safety Code § 11352 was categorically too broad, under 8 U.S.C. § 1227(a). We held the same in *S-Yong v. Holder*, 600 F.3d 1028, 1034 (9th Cir. 2010), addressing California Health & Safety Code § 11379.

**[4]** Were we to interpret "drug trafficking offense" in the sentencing context to be consistent with our interpretation in the immigration context, i.e., that its meaning is defined by the CSA, Section 11351 would be too broad to categorically qualify as a "drug trafficking offense." The statute at issue in *Mielewczyk*, California Health & Safety Code § 11352(a), differs from Section 11351 only in that it includes cocaine base. *Compare* Cal. Health & Safety Code § 11351 (listing numerous subsections and subparagraphs of controlled substances schedule statutes) *with id.* § 11352(a) (listing same subsections and subparagraphs, with one addition, subparagraph (f)(1) of Section 11054; *see id.* § 11054(f)(1) (cocaine base). Cocaine base was not the reason we found Section 11352 to be too broad in *Mielewczyk*, because cocaine base is covered by the CSA. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (b)(1)(B)(iii). Thus, like Section 11352, Section 11351 also criminalizes possession or purchase of substances that are not covered under the CSA.

We acknowledge that our holdings in the immigration context do not definitively resolve the issue we address here because the text of the immigration statute 8 U.S.C. § 1227(a)

differs from the text of the Sentencing Guidelines we inter-
pret. The immigration statutes make deportable:

> Any alien who at any time after admission has been
> convicted of a violation of (or a conspiracy or
> attempt to violate) any law or regulation of a State,
> the United States, or a foreign country relating to *a*
> *controlled substance (as defined in section 802 of*
> *Title 21*), other than a single offense involving pos-
> session for one's own use of 30 grams or less of
> marijuana.

8 U.S.C. § 1227(a)(2)(B)(i). Thus, the text of the immigration
statute states that the "controlled substance" must be one that
is "defined in section 802 of Title 21," which is the CSA.

In contrast, the pertinent language in the Sentencing Guide-
lines differs from that of 8 U.S.C. § 1227(a)(2)(B)(i) because
the term "controlled substances" is not therein expressly
linked to the CSA. The Government asks us to find that this
lack of explicit incorporation of the CSA into the Sentencing
Guidelines means that the Sentencing Guidelines do not limit
the definition of "controlled substances" to the substances
found in the CSA. In support of its position, the Government
points to other portions of the Sentencing Guidelines which
explicitly incorporate federal statutory definitions. *See, e.g.*
U.S.S.G. § 2L1.2 Application Notes (1)(B)(i) (defining "alien
smuggling offense" to refer to the meaning in 8 U.S.C.
§ 1101(a)(43)(N); *id.* Application Notes (1)(B)(v) (defining
"firearms offense" to refer to firearms as described in 18
U.S.C. § 921). The Government also contends that the history
of the drafting of the Sentencing Guidelines counsels against
incorporation of the CSA into the definition of "controlled
substances." We reject these arguments, which are rooted in
canons of statutory interpretation and presumptions of Con-
gressional intent under *Russello v. United States*, 464 U.S. 16
(1983), because accepting the Government's position would
undermine the reasoning underlying the categorical analysis

in the first place, as articulated in *Taylor*, as well as the purpose of the Sentencing Guidelines.

*Taylor* aspires to "a single national" definition of a given crime under its categorical approach and we have recognized that the definition should include generic elements of the offense at issue. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1157-58 (9th Cir. 2008) (en banc).

> The underlying theory of *Taylor* is that a national definition of the elements of a crime is required so as to permit uniform application of federal law in determining the federal effect of prior convictions . . . . Without defined elements a comparison of the state statute with a federally-defined generic offense is not possible.

*Id.* (internal citations and footnotes omitted). The purpose of the generic definition as envisioned in *Taylor* was to ensure that there is some "uniform definition independent of the labels employed by various [s]tates' criminal codes." *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 920 (9th Cir. 2011) (en banc) (quoting *Taylor*, 495 U.S. at 589). Applying these principles to the issue before us, the meaning of "drug trafficking offense" should not "depend on the definition adopted by the State of conviction." *Taylor*, 495 U.S. at 589; *see also United States v. Hudson*, 618 F.3d 700, 703-05 (7th Cir. 2010) ("There is no reason why the guidelines [sic] must be restricted to a particular state's concept of what is meant by that term.").

The Government contends that its position is still viable notwithstanding *Taylor*'s focus. "The Guidelines include a specific national definition for 'drug trafficking offense'—the only question is whether the phrase 'controlled substance' within that definition should take its broad ordinary meaning or should incorporate the specific list of the substances . . . under the CSA." This contention fails because defining the

term "controlled substance" to have its ordinary meaning of a drug regulated by law would make what offenses constitute a drug offense *necessarily* depend on the state statute at issue.

The criminal act at issue here—possession or purchase of a controlled substance—is a crime because California defined certain substances, such as tar heroin, as being controlled. This crime is of a different nature than certain other crimes for which the courts have provided generic definitions. For example, in *Taylor*, the Court defined "burglary" to be any crime with the elements of "unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Taylor*, 495 U.S. at 598. Thus, even if a state named a crime with these elements something different than "burglary," the generic definition of the crime of "burglary" would still be met as long as the crime, under whatever name, required those elements. On the other hand, what makes the act of possessing or purchasing a substance for sale illegal under Section 11351 is the fact that the substance must be "controlled," under state law. Thus, under the Government's position, the definition of what is a "controlled substance" is necessarily dependent on the state law.

The Government next suggests that we can properly incorporate the ordinary meaning of the term "controlled substance" into Section 11351 in the same way that courts have adopted an ordinary meaning for the term "counterfeit substance." Several circuits have found the meaning of "counterfeit substance" to be based on its plain, ordinary meaning, without reference to the CSA, even though the term "counterfeit substance" is also defined in the CSA. *See, e.g.*, *United States v. Hudson*, 618 F.3d 700, 703-05 (7th Cir. 2010); *United States v. Mills*, 485 F.3d 219, 222-26 (4th Cir. 2007); *United States v. Robertson*, 474 F.3d 538, 540-41 (8th Cir. 2007); *United States v. Crittenden*, 372 F.3d 706, 707-10 (5th Cir. 2004); *United States v. Frazier*, 89 F.3d 1501, 1505 (11th Cir. 1996).

We find an important distinction between the terms "counterfeit substances" and "controlled substances." The word "counterfeit" has a normal, everyday meaning that we all understand. *See* Merriam-Webster's Collegiate Dictionary 285 (11th ed. 2005) (defining "counterfeit" as "made in imitation of something else with the intent to deceive: forged"); Black's Law Dictionary 375 (8th ed. 2004) (defining "counterfeit" as "to unlawfully forge, copy or imitate an item . . . or to possess such an item without authorization and with the intent to deceive or defraud by presenting the item as genuine"). Accordingly, various courts have defined this term to include two components based on plain meaning: made (1) in imitation and (2) with intent to deceive. *See Robertson*, 474 F.3d at 541; *Crittenden*, 372 F.3d at 708. This definition of "counterfeit substances" has an independent meaning from however it may be defined in a specific state or federal statute.

The same is not true of the word "controlled." While the word "controlled" may have a plain and ordinary meaning,[2] whether a substance is "controlled" must, of necessity, be tethered to some state, federal, or local law in a way that is not true of the definition of "counterfeit." To construe the term "controlled" as the Government urges would require the Sentencing Guidelines to take into account the substances that individual states "control." This would be contrary to the goal of the Sentencing Guidelines to seek "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. One, Pt. A.

---

[2]The term "controlled substance" has been defined to mean a drug regulated by law. *See, e.g.*, Black's Law Dictionary (2009 ed.) ("Any type of drug whose possession and use is regulated by law, including a narcotic, a stimulant, or a hallucinogen."); Oxford English Dictionary ("[A]n addictive or behaviour-altering drug: restricted by law in respect of availability, possession, or use."); American Heritage Dictionary (4th ed. 2000) ("A drug or chemical substance whose possession and use are regulated under the Controlled Substances Act.").

**[5]** In light of the above, we decline to adopt the Government's position that the term "controlled substance" should mean any substance controlled by law. In order to effectuate the goal set forth in *Taylor* of arriving at a national definition to permit uniform application of the Sentencing Guidelines, we hold that the term "controlled substance," as used in the "drug trafficking offense" definition in U.S.S.G. § 2L1.2, means those substances listed in the CSA. Our holding today harmonizes the definition in the Sentencing Guidelines with the immigration statute, and makes the *Taylor* analysis under these two schemes consistent for these offenses. Our holding is also consistent with the reasoning of the Eighth Circuit, which reached the same conclusion regarding whether California Health & Safety Code § 11378 constituted a drug trafficking offense under U.S.S.G. § 2L1.2. *United States v. Sanchez-Garcia*, 642 F.3d 658, 661-62 (8th Cir. 2011) (recognizing that the California statute and Sentencing Guidelines used the term "controlled substance" but that the Sentencing Guidelines did not define the term, and adopting the defendant's position that the term should be defined as substances listed in the CSA); *see also United States v. Benitez-de Los Santos*, 650 F.3d 1157, 1159-60 (8th Cir. 2011) (assuming that CSA applies and that the categorical analysis does not apply to California Health & Safety Code § 11351 under the Sentencing Guidelines).

**[6]** We conclude that Section 11351 is categorically broader than the Guidelines definition of "drug trafficking offense" because it criminalizes possession or purchase of certain substances that are not covered by the CSA. *See Ruiz-Vidal*, 473 at 1078; *Mielewczyk*, 575 F.3d at 995. Accordingly, we hold that Section 11351 does not categorically qualify as a "drug trafficking offense" under U.S.S.G. § 2L1.2.

## II.  Modified Categorical Analysis

**[7]** We next apply the modified categorical analysis to determine if Leal-Vega's prior conviction qualifies as a "drug

trafficking offense." Under the modified categorical approach, we may not look beyond the record of conviction to the particular facts underlying the conviction. *United States v. Vidal*, 504 F.3d 1072, 1086 (9th Cir. 2007) (en banc). Our inquiry is limited to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005); *Ruiz-Vidal*, 473 F.3d at 1078. We held in *United States v. Snellenberger*, 548 F.3d 699, 701 (9th Cir. 2008) (en banc), that we may also consider documents of "equal reliability," including, but not limited to, a clerk's minute order.

Several judicially noticeable documents concerning Leal-Vega's conviction were before the district court. The 1999 felony complaint charged in Count 1 "[t]hat the above named defendants committed a violation of Health and Safety Code Section § 11351, a felony, in that on or about March 1, 1999, in the County of Riverside, State of California, they did wilfully and unlawfully possess for sale and purchase for purpose of sale a controlled substance, to wit, *TAR HEROIN*." Tar heroin is controlled under the CSA as a Schedule I drug. 21 U.S.C. § 812. An abstract of judgment stated that Leal-Vega was convicted of count 1 under HS 11351P for "Selling Contoll. [sic]" A minute order stated that "Defendant pleads Guilty to Count(s) 1" and the charges are listed as "1) 11351 HS-F C." Finally, a felony plea form stated that the "defendant is to enter a guilty plea to the following charges and/or enhancements" followed by a handwritten "11351 H+S."

Leal-Vega contends that these documents which establish that he pled guilty to "Count 1" are not sufficiently reliable to be considered under the modified categorical approach. We reject this argument because of our prior holdings to the contrary. The minute order stating that Leal-Vega pled guilty to "Count 1" may be considered under S*nellenberger*. 548 F.3d at 701-02. The minute order at issue here is of sufficient reli-

ability because it is similarly "prepared by a court official at the time the guilty plea is taken" and "[t]he clerk presumably exercises that duty as faithfully and diligently as, for example, court reporters, upon whose transcripts we regularly depend." *Id.* at 702. Moreover, the abstract of judgment stating that Leal-Vega was convicted of "Count 1" may be considered under *Ramirez-Villalpando v. Holder*, 645 F.3d 1035 (9th Cir. 2011). We clarified in *Ramirez-Villalpando* that an abstract of judgment could be used, if it is not the only document that is used to determine if a prior offense meets the modified categorical approach. *Id.* at 1040. Thus, both these documents may be used, in conjunction with the felony complaint, under the modified categorical analysis.

[8] We hold that the record of conviction establishes that Leal-Vega was convicted of possession of tar heroin. The felony complaint narrowed the charge and stated that Leal-Vega was charged under Count 1 with possession for sale of tar heroin under Section 11351. Both the minute order and the abstract of judgment confirm that he pled guilty to "Count 1," under Section 11351. No evidence in the record suggests that any modifications were made to the felony complaint in terms of the substance involved. Thus, no ambiguity exists and no further clarifying language was necessary. *See Snellenberger*, 548 F.3d at 701-702.

We find *Snellenberger* to be directly on point. The minute order in *Snellenberger* stated that the defendant pled nolo contendere to count 1. 548 F.3d at 701. Count 1 from the charging document established the federal offense of burglary. *Id.* We concluded that "[t]ogether, these lines establish that Snellenberger pleaded nolo contendere to count 1, which charged him with 'enter[ing] an inhabited dwelling house and trailer coach and inhabited portion of a building occupied by Peter MacPherson, with the intent to commit larceny and any felony' " and thus, the documents establish that Snellenberger committed burglary of a dwelling. *Id.* For Leal-Vega, both the minute order and abstract of judgment state that Leal-Vega

pled guilty to Count 1. Count 1 in the complaint identified the substance as tar heroin. This is the exact situation we faced in *Snellenberger*.

In contrast, the factual situation in *United States v. Vidal*, the case relied on by Leal-Vega, was quite different. In *Vidal*, the felony complaint charged the defendant in Count one with "willfully and unlawfully *driv[ing] and tak[ing]* a vehicle . . . without the consent of and with intent to deprive the owner of title to and possession of said vehicle, in violation of Vehicle Code Section 10851(a)." 504 F.3d at 1075 (emphasis added). However, the defendant only pled guilty to "Count 1 10851(a) VC Driving a Stolen Vehicle," as reflected in the written plea form. *Id.* at 1087. Thus, the language in the plea only referred to "[d]riving a stolen vehicle" and did not include anything about driving *and taking the vehicle without consent*, as the felony complaint charged. We held that "the paltry record before the district court does not eliminate the possibility that Vidal was convicted as an accessory after the fact to theft, which we have concluded does not fall within the generic theft offense." *Id.* at 1089. There is no such "paltry record" here—rather, the only substance referred to in the record of conviction is tar heroin. On this record, we cannot conclude that there is any reasonable possibility that Leal-Vega's conviction was based on possession of another substance.

**[9]** We hold that the felony complaint, read together with the minute order and abstract of judgment, are sufficient under the modified categorical approach to establish that Leal-Vega plead guilty to possession with the purpose of sale of tar heroin, a substance included in the CSA. Thus, his prior conviction constitutes a "drug trafficking offense" under U.S.S.G. § 2L1.2, and a sixteen-level sentencing enhancement should have been applied.

## III. Harmless Error

Finally, Leal-Vega contends that even if there was a sentencing error, the error was harmless because the district court

had other reasons to impose the sentence it did. During sentencing, the judge stated: "I find that the following sentence is reasonable and is sufficient, but no greater than necessary to comply with the purposes stated in Title 18 United States Code Section 3553(a)." Seizing upon this statement, Leal-Vega argues that the district court's sentence was based on many mitigating factors, and that these factors would have worked to lower the sentence to thirty months, regardless of the Sentencing Guidelines calculation.

Generally, "a mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011). *In Munoz-Camarena*, the Government made the same argument that Leal-Vega attempts here—that remand is unnecessary because the district court would have sentenced the defendant to sixty-five months regardless of whether a four- or eight-level enhancement applied. *Id.* Rejecting this argument, we emphasized:

> The Supreme Court has made clear that the district court must correctly calculate the recommended Guidelines sentence and use that recommendation as the " 'starting point and the initial benchmark.' " The Supreme Court also has emphasized that the recommended Guidelines range must "be kept in mind throughout the process." A district court must start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence.

*Id.* (citations omitted). However, if there is a mistake made in the Guidelines calculation, harmless error review does apply. *Id.* We gave the following non-exhaustive examples of situations when harmless error occurs:

> For example, harmless error may result if the district court: (1) acknowledges that the correct Guidelines

range is in dispute and performs his sentencing anal-
ysis twice, beginning with both the correct and
incorrect range; (2) chooses a within-Guidelines sen-
tence that falls within both the incorrect and the cor-
rect Guidelines range and explains the chosen
sentence adequately; (3) imposes a statutory mini-
mum or maximum and adequately explains why no
additional or lesser term of imprisonment is neces-
sary; or (4) performs the sentencing analysis with
respect to an incorrect Guidelines range that overlaps
substantially with a correct Guidelines range such
that the explanation for the sentence imposed is suf-
ficient even as to the correct range.

*Id.* at 1030 n.5. Applying this framework, we stated that "[a]
district court's mere statement that it would impose the same
above-Guidelines sentence no matter what the correct calcula-
tion cannot, without more, insulate the sentence from remand,
because the court's analysis did not flow from an initial deter-
mination of the correct Guidelines range." *Id.* at 1031. Rather,
the sentencing court must explain "the reason for the extent
of a variance" and the "extent necessarily is different when
the range is different, so a one-size-fits-all explanation ordi-
narily will not suffice." *Id.*

[10] We reject Leal-Vega's contention that the district
court's statement is sufficient to insulate his sentence from the
incorrect Sentencing Guidelines calculation. The statement
cited is a mere boilerplate recitation of the language of 18
U.S.C. § 3553(a). This single statement, "without more," is
not enough to show harmless error. *Munoz-Camarena*, 631
F.3d at 1031. Nothing in the sentencing colloquy suggests that
the sentencing judge stated that he would impose the same
sentence regardless of the Guidelines calculation because of
the mitigation factors. Indeed, the four-level enhancement that
the district court applied set the Guidelines range to be
twenty-four to thirty months, and the court applied the high
end of that range. Had the correct sixteen-level enhancement

been imposed, the sentencing range would have been seventy-seven to ninety-six months. With this correct starting point, the thirty-months sentence imposed would have signified a forty-seven months departure from the low end. We find nothing in the sentencing transcript indicating that the sentencing judge would have thought that a forty-seven months departure under the correct Guidelines level would have been appropriate. *See Munoz-Camarena*, 631 F.3d at 1031 ("The court must explain, among other things, the reason for the extent of a variance. The extent necessarily is different when the range is different, so a one-size-fits-all explanation ordinarily does not suffice.") (internal citation omitted).

[11] Accordingly, we conclude that the Sentencing Guidelines calculation error is not harmless, and we are required to remand the case for resentencing in light of the error.

## CONCLUSION

We hold that California Health & Safety Code § 11351 does not categorically qualify as a drug trafficking offense under U.S.S.G. § 2L1.2, but that Leal-Vega's specific conviction involving tar heroin does qualify, applying the modified categorical analysis. Thus, a sixteen-level enhancement should have been applied in the Sentencing Guidelines calculation, and we reverse and remand for resentencing.

**REVERSED AND REMANDED FOR RESENTENCING**.