**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FIDAL ABDELJAWAD,

    Defendant - Appellant.

No. 18-2121
(D.C. No. 1:15-CR-03394-WJ-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **McHUGH**, and **SEYMOUR**, Circuit Judges.
_____

This appeal involves sentencing for drug crimes. When deciding on the sentence, district courts ordinarily consider the potency and weight of the drugs. To aid courts in considering potency and weight, the U.S. Sentencing Commission has created guidelines. But new drugs frequently enter the market,[1] creating gaps in the Sentencing Commission's

_____

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1]    *See United States v. Ono*, 997 F.2d 647, 649 (9th Cir. 1993) (noting that "[t]he illicit drug industry is constantly changing and experimenting to create new 'designer drugs,'" preventing the Sentencing Commission from

handiwork. An example is the emergence of synthetic marijuana, which was involved in Mr. Abdeljawad's crimes. Synthetic marijuana is the combination of synthetic cannabinoid, which is a controlled substance, and inert plant material.

At the time of Mr. Abdeljawad's sentencing, the guidelines did not specify how to consider mixtures containing synthetic cannabinoid. So the district court had to decide how to handle this gap in the guidelines. The district court decided to handle this gap by excluding the inert plant material and considering only the synthetic cannabinoid. Mr. Abdeljawad argues that the district court should have included the inert plant material. We disagree.

**1.     When gaps exist, the district court must find an equivalent drug from a list of controlled substances.**

To decide on the sentence, the district court must determine the guideline range for the applicable year. (Here, the applicable year is 2017.)[2] To determine this range, the court considers the drug weight. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.5 (U.S. Sentencing Comm'n 2016).

---

"list[ing] or predict[ing] every potential chemical composition that yields a new drug").

[2]     In 2017, however, the U.S. Sentencing Commission did not publish a new set of the guidelines. The Commission instead continued to use the 2016 version throughout 2017.

2

But different drugs may weigh the same yet differ dramatically in potency. Given these variations in potency, the Sentencing Commission provides two lists that guide consideration of relatively common drugs: (1) a drug-quantity table and (2) a drug-equivalency table. *Id.* § 2D1.1(c) (drug-quantity table), cmt. n.8(D) (drug-equivalency table). The drug-quantity table lists the base-offense level, which is triggered by the type and weight of the controlled substance; and the drug-equivalency table provides a list to convert the weights for various drugs into a uniform system of measurement. But many drugs are omitted from both lists.

When the defendant's drug is omitted, it must be compared to one of the drugs on the Sentencing Commission's lists.[3] For this comparison, the Sentencing Commission specifies that both the actual drug and the listed drug must be "controlled substance[s]." *Id.* § 2D1.1 cmt. n.6. The actual

---

[3]     The application note requires comparison to "the most closely related controlled substance referenced *in this guideline*." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.6 (U.S. Sentencing Comm'n 2016) (emphasis added). Some circuits treat the italicized phrase ("in this guideline") as a reference to the drug-equivalency table. *United States v. Ramos*, 814 F.3d 910, 918 (8th Cir. 2016). Other circuits treat this phrase as a reference to either of the two lists (either the drug-quantity table or the drug-equivalency table). *United States v. Moreno*, 870 F.3d 643, 645–46 (7th Cir. 2017); *United States v. Giggey*, 867 F.3d 236, 239 (1st Cir. 2017).

This difference would not affect our analysis. Both sides agree that the court had to compare Mr. Abdeljawad's drug with THC (as well as marijuana). THC appears in the list for the drug-equivalency table but not the list for the drug-quantity table.

3

drug is described as "a controlled substance that is *not* specifically referenced in this guideline." *Id.* (emphasis added). The court must compare this "controlled substance" to another "controlled substance" that *is* "referenced in this guideline." *Id.*

**2. The district court considered only the synthetic cannabinoid (without the plant material) to make the comparison.**

This case requires the Court to decide how to conduct this comparison when the case involves synthetic marijuana. Until recently, marijuana consisted of plant material that naturally contains THC. Now, however, marijuana can also be synthetic. Synthetic marijuana is a mixture of synthetic cannabinoid (a synthetic substance that binds to the same brain cell receptors as THC) and inert plant material. The inert plant material serves as a carrier medium for someone to use the synthetic cannabinoid.

Prior to 2018, natural marijuana and THC appeared in the Sentencing Commission's lists, but synthetic cannabinoid was omitted. U.S. Sentencing Guidelines Manual § 2D1.1(c) (drug-quantity table), cmt. n.8(D) (drug-equivalency table) (U.S. Sentencing Comm'n 2016). Notwithstanding this omission, the district court had to calculate the converted drug weight of Mr. Abdeljawad's drug in order to use the drug-quantity table.

To calculate the converted drug weight, the court had to determine which listed controlled substance on the drug-equivalency table most

4

closely resembled Mr. Abdeljawad's drug. Among the possibilities, Mr. Abdeljawad picked marijuana and the government picked THC.

**3.  The inert plant material was properly excluded from the phrase "controlled substance that is not specifically referenced."**

Before these drugs could be compared, the district court had to apply Application Note 6, which instructs courts on how to calculate the weight of drugs omitted from the Sentencing Commission's lists. The application note refers to a drug omitted from these lists as "a controlled substance that is not specifically referenced in this guideline." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.6 (U.S. Sentencing Comm'n 2016).

The district court had to interpret this phrase in the context of Mr. Abdeljawad's case. Does this phrase refer to

- just the synthetic cannabinoid or

- the mixture of the synthetic cannabinoid and the inert plant material?

The district court decided to consider just the synthetic cannabinoid (without the inert plant material).

**A.  Ordinary Meaning**

In considering this decision, we must interpret the guidelines. Because interpreting the guidelines involves a legal question, we engage in

5

de novo review. *United States v. Archuleta*, 865 F.3d 1280, 1285 (10th Cir. 2017).

Conducting this review requires us to determine the Sentencing Commission's intent. *United States v. Rivera-Oros*, 590 F.3d 1123, 1129 (10th Cir. 2009). To do so, we use "accepted rules of statutory construction." *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011) (quoting *United States v. Nacchio*, 573 F.3d 1062, 1066 (10th Cir. 2009)). These rules generally involve consideration of a guideline term's ordinary meaning. *United States v. Thomas*, 939 F.3d 1121, 1123 (10th Cir. 2019).

We must interpret the term "controlled substance that is not specifically referenced in this guideline." This phrase can be broken down into a noun ("controlled substance") and a restrictive modifier ("that is not specifically referenced in this guideline"). The noun itself ("controlled substance") is undefined in the guidelines. And "[w]hile the word 'controlled' may have a plain and ordinary meaning, whether a substance is 'controlled' must, of necessity, be tethered to some state, federal, or local law." *United States v. Leal-Vega*, 680 F.3d 1160, 1167 (9th Cir. 2012) (footnote omitted). We thus interpret the term "controlled substance" based on its legal definition.

The legal definition of "controlled substance" comes from the Controlled Substances Act. 21 U.S.C. § 802(6);[4] *see Leal-Vega*, 680 F.3d at 1167 (holding "that the term 'controlled substance,' as used in the 'drug trafficking offense' definition in U.S.S.G. § 2L1.2, means those substances listed in the [Controlled Substances Act]"). This statute defines a "controlled substance" as "a drug or other substance . . . included in schedule I, II, III, IV, or V of [the Act]." 21 U.S.C. § 802(6). Schedule I includes synthetic cannabinoid (without the inert plant material). *Id.* § 812 sched. I(d). But none of the schedules include the mixture of synthetic cannabinoid and inert plant material.

Given the absence of the mixture in any of the Act's schedules, the mixture can't constitute a "controlled substance." And if the mixture isn't a "controlled substance," it can't fall into an even narrower class of controlled substances that are "not specifically referenced in this guideline."[5]

---

[4] The Sentencing Commission showed its intent to use the Controlled Substances Act's definition by using the Act to create a "drug-quantity table," which standardizes the courts' consideration of common drugs. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8(A) (U.S. Sentencing Comm'n 2016) (explaining that the Sentencing Commission used the Controlled Substances Act to create the drug-quantity table).

[5] Mr. Abdeljawad points out that Application Note 6 also requires consideration of "[w]hether a lesser or greater quantity of the controlled substance not referenced in this guideline is needed to produce a substantially similar effect on the central nervous system as a controlled

**B.    Comparison of Chemical Structures of the Actual and Listed Drugs**

The meaning of the term "controlled substance" comes not only from the Controlled Substances Act but also from the context of the criteria in Application Note 6. These criteria include a comparison of the chemical structures for the actual drug and the listed drug. U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.6(A) (U.S. Sentencing Comm'n 2016).

Suppose that we adopt Mr. Abdeljawad's interpretation, including the inert plant material in the comparisons to THC and marijuana. If we were to do so, we'd consider the chemical structure of the inert plant material. But this material serves only as the carrier medium for the synthetic cannabinoid. Why would the carrier medium's chemical structure be pertinent? If the chemical structure of THC or marijuana matched the chemical structure of the synthetic cannabinoid, that match should be enough. Comparing the chemical structure of the carrier medium to marijuana or THC would serve no conceivable purpose.

substance referenced in this guideline." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.6(c) (U.S. Sentencing Comm'n 2016). According to Mr. Abdeljawad, this criterion "does not permit the sentencing judge to disregard *controlled substances* that are, by their very nature, mixtures." Appellant's Opening Br. at 17 (quoting *United States v. Ramos*, 814 F.3d 910, 922 (8th Cir. 2016) (Bright, J., concurring in part and dissenting in part) (emphasis added)). But synthetic marijuana is not a "controlled substance." Synthetic marijuana thus can't constitute a "controlled substance that is not specifically referenced in this guideline."

Given the context of Application Note 6's criteria, it would make little sense to consider the inert plant material as part of Mr. Abdeljawad's drug.

## C. The Sentencing Commission's Alleged Intent to Increase Punishment Based on the Concentration of THC

Considering only the synthetic cannabinoid as the "controlled substance that is not specifically referenced in this guideline," the district court compared the synthetic cannabinoid to marijuana and THC. The district court found that between the two controlled substances, synthetic cannabinoid more closely resembled THC.

Selecting THC catapulted the guideline range, making every gram of synthetic cannabinoid the equivalent of 167 grams of marijuana. Mr. Abdeljawad argues that this astronomic increase in weight undermines the Sentencing Commission's intent to punish based on the concentration of THC. According to Mr. Abdeljawad, the Sentencing Commission intended to mete out the most severe punishment for THC, followed by hashish oil (which is more diluted than THC), then by hashish (which is more diluted than hashish oil). U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8(D) (U.S. Sentencing Comm'n 2016).

But later events show that a multiplier of 167 is consistent with the Sentencing Commission's intent. After Mr. Abdeljawad was sentenced, the Commission amended the drug-equivalency table to include synthetic

9

cannabinoid. In this amendment, the Commission assigned each gram of synthetic cannabinoid the marijuana equivalent of 167 grams—precisely the same result as if the court were to consider THC as the most comparable controlled substance. U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.8(D) (U.S. Sentencing Comm'n 2018); *see United States v. Koss*, 812 F.3d 460, 471 (5th Cir. 2016) ("[T]he plain language of the Guidelines states that mixtures or substances containing a detectable amount of THC are properly calculated using the 1:167 gram ratio."). Given this change in the guidelines, we view the district court's exclusion of the inert plant material as consistent with the Sentencing Commission's intent.

### D. Absurdity of Ruling Out Other Possible Candidates for Comparison

Mr. Abdeljawad also argues that our interpretation leads to an absurdity because it would prevent consideration of marijuana as the equivalent of any mixture of a THC-based substance and inert plant material. We reject this argument.

The issue before the district court was simply how to define Mr. Abdeljawad's drug: Was it just the synthetic cannabinoid or did it include the inert plant material? Mr. Abdeljawad suggests that *excluding* the inert plant material would prevent any court from considering *marijuana* as the equivalent of a mixture of inert plant material and synthetic cannabinoid.

10

If this suggestion is right, however, *including* the inert plant material would presumably prevent a court from considering *THC* as the equivalent. So regardless of whether the Court considers inert plant material as part of the controlled substance, the decision could affect all future cases involving consideration of synthetic marijuana.[6]

### E.   Dilution of the THC

Mr. Abdeljawad also argues that (1) our interpretation leads to unjust results because his synthetic cannabinoid was diluted by inert plant material and (2) the dilution should soften his base-offense level. But our interpretation accords with "the language and design of the [guidelines] as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988).

Even if Mr. Abdeljawad were correct that the inert plant material diluted his synthetic cannabinoid, the guidelines generally treat controlled substances identically regardless of their dilution. For example, a defendant bearing responsibility for 10 kilograms of marijuana with 1% THC would be assigned the same base-offense level as a defendant

---

[6]   Mr. Abdeljawad also argues that the district court's approach would never permit selection of hashish or hashish oil as the equivalent of synthetic marijuana. In district court, however, Mr. Abdeljawad picked marijuana and the government picked THC. *See* Part 2, above. So the district court had no reason to compare Mr. Abdeljawad's controlled substance to hashish or hashish oil. We thus express no opinion on whether hashish or hashish oil would resemble Mr. Abdeljawad's controlled substance more closely than THC.

11

responsible for 10 kilograms of marijuana with 99% THC (even though the marijuana in the first case was far more diluted). *See Chapman v. United States*, 500 U.S. 453, 461 (1991) ("Congress adopted a 'market-oriented' approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence."). The guidelines thus do not generally account for dilution in connection with the base-offense level. *See United States v. Upthegrove*, 974 F.2d 55, 56 (7th Cir. 1992) ("The Sentencing Commission made an explicit decision to focus on the weight and not the purity of the drugs in determining the offense level."); *United States v. Skelton*, 901 F.2d 1204, 1205 (4th Cir. 1990) (stating that "the purity of the drug is not usually a consideration for purposes of determining the base offense level").[7]

## F.    The Rule of Lenity

Mr. Abdeljawad also argues that if the guidelines are unclear, the rule of lenity should give him the benefit of any doubt. But the guidelines are clear. They specify that the actual drug must be a "controlled substance," which can refer only to the synthetic cannabinoid (not the

---

[7]    The guidelines instead account for purity through departures. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.27 (U.S. Sentencing Comm'n 2016). For example, the guidelines permit an upward departure if the defendant possesses unusually pure drugs. *Id.* § 2D1.1 cmt. n.27(C).

mixture of the synthetic cannabinoid and inert plant material). Given the clarity of this language, we have no reason to apply the rule of lenity. *See United States v. Randall*, 472 F.3d 763, 766–67 (10th Cir. 2006) (concluding that the rule of lenity did not apply because the guideline provision was unambiguous).

\* \* \*

The phrase "controlled substance that is not specifically referenced in this guideline" refers to synthetic cannabinoid, not the mixture of synthetic cannabinoid and inert plant material. Because the mixture isn't a controlled substance, the mixture can't constitute a "controlled substance that is not specifically referenced in this guideline." The district court thus did not err in using only the synthetic cannabinoid to decide the equivalent controlled substance level.

Affirmed.

Entered for the Court


Robert E. Bacharach
Circuit Judge

13