**NOT FOR PUBLICATION**

**FILED**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

JUN 21 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-50029 |
| Plaintiff-Appellee, | D.C. No. 3:22-cr-00038-CAB-1 |
| v. | |
| KEVIN ANTONIO QUEVEDO-MONCADA, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted June 6, 2024
Pasadena, California

Before: M. SMITH and BADE, Circuit Judges, and FITZWATER,** District
Judge.
Concurrence by Judge Fitzwater.

Kevin Antonio Quevedo-Moncada appeals his sentence of 51 months'

imprisonment followed by a term of three years' supervised release. Quevedo

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Sidney A. Fitzwater, United States District Judge for
the Northern District of Texas, sitting by designation.

pleaded guilty to one count of transportation of aliens resulting in death, and one count of transportation of aliens resulting in serious bodily injury, both in violation of 8 U.S.C. § 1324. We review de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Melchor-Zaragoza*, 351 F.3d 925, 927 (9th Cir. 2003). We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and we vacate Quevedo's sentence and remand for resentencing.

1. At sentencing, the district court erred by not grouping Quevedo's counts of conviction under Guideline § 3D1.2(d) and, in turn, adding one point to its calculation of the total offense level. The district court concluded that the counts did not involve substantially the same harm and declined to group Quevedo's two alien smuggling counts because the counts involved "two separate victims." Under Guideline § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule" when they involve any of four listed circumstances. Applicable here, subsection (d) provides that "[o]ffenses covered by the following guidelines are to be grouped under this subsection," and it lists thirty-five guidelines, including § 2L1.1, "Smuggling, Transporting, or Harboring an Unlawful Alien." Guideline § 2L1.1 applies to 8 U.S.C. § 1324 offenses. Therefore, Quevedo's convictions for violations of § 1324 are covered by a guideline that is included in the list of "guidelines [that] are to be grouped"

2

under subsection (d).

In *United States v. Buenrostro-Torres*, 24 F.3d 1173, 1176 (9th Cir. 1994) (per curiam), we held that a district court is "required" to group offenses that are covered by a guideline listed within § 3D1.2(d)'s enumerated list. We explained that "[i]f the offenses at issue are covered by one of the listed guidelines we do not analyze the facts of the particular case" because "Congress has determined that such offenses are categorically groupable under § 3D1.2(d)." *Id.*

The government acknowledges that the list of "guidelines that are to be grouped" is part of subsection (d), and includes § 2L1.1, but argues that § 3D1.2(d)'s direction to group listed offenses "only applies to such offenses when no one has been injured or killed." The government relies on the background commentary, which explains that "[a] primary consideration in this section is whether the offenses involve different victims." U.S.S.G. § 3D1.2, Background ¶ 2. The commentary further explains that "[c]ases involving injury to distinct victims . . . should be treated separately rather than grouped together." *Id*. But the commentary also explains that "[c]ounts involving different victims (or societal harms in the case of 'victimless' crimes) are grouped together only as provided in subsection (c) or (d)." *Id.* Thus, the commentary directs the grouping of counts involving different victims as provided in subsection (d). And subsection (d) directs grouping of counts covered by § 2L1.1, which applies to Quevedo's § 1324

3

offenses.  Therefore, § 3D1.2(d) and *Buenrostro-Torres*, 24 F.3d at 1176, compel our conclusion that the district court's failure to group Quevedo's alien smuggling counts was in error.

2.    We must vacate Quevedo's sentence and remand for resentencing unless the government establishes that this Guidelines calculation error was harmless.  *See United States v. Klensch*, 87 F.4th 1159, 1166 (9th Cir. 2023).  The government contends that any error was harmless because the incorrect Guidelines range "overlaps substantially with" the correct Guidelines range "such that the explanation for the sentence imposed is sufficient even as to the correct range." *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 n.5 (9th Cir. 2011) (per curiam).  However, in *Munoz-Camarena* we explained that a remand for resentencing is "required" under the harmless error standard unless we are "convinced that the district court would impose the same sentence if the correct Guidelines range was kept in mind throughout the process."  *Id.* at 1031 (internal quotation marks omitted).

Here, the district court thoroughly explained its Guidelines calculations, including a two-point downward variance, but nothing in the sentencing transcript suggests the court would have imposed the same sentence had it started with the correct offense level.  *See United States v. Leal-Vega*, 680 F.3d 1160, 1170 (9th Cir. 2012) ("Nothing in the sentencing colloquy suggests that the sentencing judge

4

stated that he would impose the same sentence regardless of the Guidelines calculation because of the mitigation factors.").  Although there is a significant overlap between the correct and incorrect Guidelines ranges, we are not "convinced that the district court would [have] impose[d] the same sentence." *Munoz-Camarena*, 631 F.3d at 1031.  Therefore, we cannot "say with certainty that the district court's sentencing error was harmless." *United States v. Bankston*, 901 F.3d 1100, 1108 (9th Cir. 2018).  We vacate Quevedo's sentence and remand for resentencing.[1]

**VACATED AND REMANDED.**

---

[1] Because we remand for resentencing, we do not reach Quevedo's arguments, raised for the first time on appeal, that the district court erred by failing to announce the revocation sentencing range for a term of supervised release at the sentencing hearing, and by failing to make specific and particularized findings before imposing a term of supervised release on a deportable alien, which he asserts is required by Guideline § 5D1.1 and Application Note 5.  We note, however, that the district court sentenced Quevedo before we decided *United States v. Montoya*, 82 F.4th 640 (9th Cir. 2023) (en banc).  On remand, the district court should comply with *Montoya* "by orally pronouncing any of the standard conditions of supervised release that it chooses to impose and by giving [Quevedo] a chance to object to them." *Id.* at 656.

*United States v. Quevedo-Moncada*, No. 23-50029

FITZWATER, District Judge, concurring:

I concur in the memorandum disposition because it correctly applies current Ninth Circuit law. I urge the court, however, to reconsider in the appropriate case its approach to grouping under U.S.S.G. § 3D1.2, at least where the grouped offenses involve different victims.

In this case, the memorandum disposition vacates the district court's decision not to group relevant conduct that involved one victim's death and the other victim's serious personal injuries. Several other circuits, however, would appear to permit what the district judge did here. *See, e.g.*, *United States v. Vasco*, 564 F.3d 12, 23 (1st Cir. 2009) (citations omitted) ("Crimes involving multiple victims, even if the offenses arose out of a single event, are properly grouped separately."); *United States v. Jose-Gonzalez*, 291 F.3d 697, 707 (10th Cir. 2002) ("When . . . the gist of the offense is injury to persons, the offense against each human victim belongs in a different group, even when the offenses arose out of a single event."); *see also United States v. Doxie*, 813 F.3d 1340, 1344-45 (11th Cir. 2016) (per curiam) (citations and internal quotation marks omitted) ("It is well-settled in this Circuit . . . that the mere listing of . . . offenses as types that are to be grouped does not automatically necessitate grouping [under § 3D1.2(d)]," because "the automatic grouping of offenses listed in the first category can detract from the purpose of section 3D1.2—to

combine offenses involving *closely related* counts."); *United States v. Goncalves*, 613 F.3d 601, 605-06 (5th Cir. 2010) (per curiam) (citation omitted) ("[G]rouping is not mandatory or automatic simply because a defendant is charged with an offense that falls under a guideline listed in § 3D1.2(d).").

This case does not warrant revisiting Ninth Circuit grouping law because the district judge on remand can again impose a below-guidelines 51-month sentence. The challenged sentence (i.e., with no grouping) was imposed after calculating an advisory guidelines range of 63 to 78 months based on a total offense level of 26 and a criminal history of I. The district judge then varied downward to an offense level of 24, resulting in an advisory guidelines range of 51 to 63 months. She then imposed a sentence of 51 months—a downward variance. As a result of our decision today, the revised guidelines range (i.e., with grouping) is 57 to 71 months based on a total offense level of 25. The district judge on remand can again vary downward two levels—this time to an offense level of 23—which would result in a guidelines range of 46 to 57 months. Assuming it is supported by the record at re-sentencing, a sentence of 51 months would fall comfortably within that range and represent a permissible below-guidelines variance.

I concur in the panel's memorandum disposition.